[No. 3600.]

## ORMAN & CROOK v. RYAN BROS.

1. CONTRACTS—PAYMENT—CONDITION PRECEDENT.

The Pacific Contract Company undertook the construction of a railway line for an incorporated railway company. O. & C. were subcontractors under the Pacific Contract Company. O. & C. let a contract for grading, etc., to R. conditioned that eighty-five per cent of the monthly estimate should be paid to R. as soon after the 15th of each month as O. & C. should receive the money for the work from the Pacific Company, and the balance when the work should be accepted and fully paid for by the Pacific Company. R. knew that neither the Pacific Contract Company nor the railway had any means to pay for the construction of the road, and that they relied solely upon the sale of bonds secured by the mortgage on the road for money to pay for its construction. *Held,* that the receipt of payment by O. & C. from the contract company was a condition precedent to their liability to R. The contract company and railway company both being insolvent and failing to sell the bonds, O. &. C. for their own protection as well as for R.'s were compelled to enforce their lien and buy in the roadbed for the indebtedness of the contract company to them, which included R.'s claim. *Held,* not a voluntary acceptance of property in payment in lieu of money such as would render O. & C. personally liable to R. R. was not entitled to a personal judgment against O. & C., but must accept his proportionate interest in the property or await its disposition so that there is money to which he is entitled. The fact that O. & C. paid for labor and material furnished R. and included R.'s claim in their lien statement was not an admission of their personal liability.

2. APPELATE PRACTICE—REHEARING—CHANGE OF BASE.

On rehearing where a judgment has been reversed the appellee will not be permitted to set up new and different grounds for affirming the judgment than those urged in the original hearing.

*Appeal from the District Court of Pueblo County.*

THE appellees, plaintiffs below, seek to establish and enforce a personal liability against the appellants for a balance alleged to be due for certain work done and performed by them in the construction of a portion of the roadbed of the Elk Mountain Railway, located in Pitkin, Gunnison and Garfield counties. The pleadings are voluminous, but the

averments material to the questions involved are in substance as follows:

The appellants, who were subcontractors under a certain corporation known as the Pacific Contract Company, which company had undertaken the construction of the entire line of railway for the Elk Mountain Railway Company, and the appellees, on the 29th day of March, 1892, made and entered into a written agreement which provided that the appellees should do certain grading and masonry work upon a specified portion of said line of railway, at certain stipulated prices; and which contained the following provisions as to the time and manner of payment for said work:

"In consideration whereof the said Orman & Crook hereby agree with the said contractor that Orman & Crook shall; for doing and performing the work aforesaid, in the manner aforesaid, pay, or cause to be paid, to said contractors, their executors or administrators, the following prices, viz: * * *. The payments will be made in the following manner, that is to say: during the progress of the work, and until it is completed, there will be a monthly estimate made by the engineer, of the quantity, character and value of the work done during the month, or since the last monthly estimate, eighty-five per cent of which value will be paid the contractors as soon after the 15th day of the succeeding month as the said Orman & Crook shall have received the money for said work from The Pacific Contract Company, and the remainder thereof shall be retained by the said party of the second part as security for the faithful performance of this contract by the said contractors until the same and all the covenants, stipulations and agreements therein contained shall have been fully complied with: and when the said work is completed and accepted by the said chief engineer there will be a final estimate made by the engineer, of the quantity, character and value of said work agreeably to the terms of this agreement; the balance appearing to be due the contractors will be paid as soon as the said Orman & Crook receive the final estimate, and the full amount of money due them for said work from

the Pacific Contract Company, to them in cash, upon their giving a release under seal, to the said Orman & Crook, from all claims or demands whatsoever growing in any manner out of this agreement."

Appellees performed the work in the manner and within the time specified in the agreement, which, under the terms of the contract, amounted to $26,531.68. During the progress of the work appellants advanced for the payment of their laborers and material men $13,938.01, leaving a balance of $12,593.67 unpaid. These advances were authorized by the agreement, and were made to protect the roadbed from liens by laborers and material men in the employ of, or under contract with, appellees. The Elk Mountain Railway Company and the Pacific Contract Conpany were without means to construct the contemplated railway, and the money for that purpose was to be realized solely from the sale of bonds of the company, secured by a first mortgage upon its property; and the appellees, at the time they entered into the agreement mentioned, knew that the money for the construction of the projected line of railway was to be so realized; and that unless such bonds should be sold, appellants would not receive from the Pacific Contract Company any money for the construction of the roadbed, and would have no security for the payment of the contract price for constructing the same, except by securing and enforcing a statutory lien on the railway; that none of the bonds of the company were negotiated or sold. After the roadbed was completed the Pacific Contract Company, having failed to pay any money to appellants by reason of the failure to sell the railway bonds, and said company and the Elk Mountain Railway Company being insolvent and having no assets other than the line of railway upon which said work had been performed, the appellants were compelled, in order to protect themselves and appellees, to file a lien against the railway property in pursuance of the statute, and to institute suit in the district court of Pitkin county against the Elk Mountain Railway Company, the Pacific Contract Company, and others, for the purpose of

foreclosing such lien. This suit resulted in a judgment against the Pacific Contract Company, in favor of appellants, for the sum of $175,959.83, which included the amount claimed by the appellees, and a decree adjudging them to be entitled to a valid statutory lien, as subcontractors, upon the whole of said line of railway; and directing the said premises to be sold under special execution for the purpose of enforcing payment of said judgment. On February 11, 1893, the premises were sold under the special execution, and bid in by appellants for the amount of the judgment, interest and costs. After said sale, as a consideration for extending the time of redemption, appellants received the sum of $10,000 from the railway company, and paid $2,400 to appellees, as their *pro rata* share thereof. The company failing thereafter to redeem the property, the appellants received a sheriff's deed for the same; and although they have, in good faith, exercised all possible diligence to sell or otherwise dispose of the property so as to enable them to realize money wherewith to pay the appellees and other subcontractors, they have been unable, up to the present time, to find any purchaser therefor, or to realize in any form any sum of money whatsoever therefrom. The money advanced by appellants substantially covered all actual expense incident to carrying on the work by appellees, and the amount now sought to be recovered by appellees is substantially a clear profit. Appellants offer to allow appellees such an interest in the line of railway as will bear a just proportion to the moneys due them, and consent that the court shall render such a decree in reference thereto as shall secure to them their just and equitable share and interest therein; ask that they be restrained from prosecuting this action for a money judgment, and be required to look to the property as aforesaid for the satisfaction of their claim. The court below, upon these issues, rendered judgment in favor of appellees. To review this judgment appellants prosecute this appeal.

Messrs. Waldron & Devine, for appellants.

Mr. JOHN R. DIXON and Messrs. PATTERSON, RICHARDSON & HAWKINS, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

The merits of the controversy depend upon the meaning and effect that should be given to the following provisions of the contract:

"The payments will be made in the following manner, that is to say: During the progress of the work, and until it is completed, there will be a monthly estimate made by the engineer, of the quantity, character and value of the work done during the month, or since the last monthly estimate, eighty-five per cent of which value will be paid the contractors as soon after the 15th day of the succeeding month *as the said Orman & Crook shall have received the money for said work from the Pacific Contract Company.* * * * And when the said work is completed and accepted by the said chief engineer there will be a final estimate made by the engineer, of the quantity, character and value of said work agreeably to the terms of this agreement; the balance appearing to be due the contractors will be paid as soon as the said *Orman & Crook receive the final estimate, and the full amount of money due them for said work from The Pacific Contract Company,*" and whether, by virtue of the subsequent proceedings, the appellants should be held to have received the money, or its equivalent within the meaning of these provisions. The appellees contend "that these stipulations were not limitations of liability, but merely a designation of the time when, or the contingency upon which, payments thereinbefore promised, should be made;" and that such contingency happened when the judgment against the Pacific Contract Company was satisfied by appellants bidding in the property at the foreclosure sale. Counsel for appellees state their position as follows:

"Our position is, and always has been, that the contract sued on created personal liability on the part of appellants pure and simple; that this liability attached *on the perform-*

*ance of the work* by appellees; that its enforcement depended on a contingency, to wit: that payment should first be made to appellants, which contingency we say has happened."

It would seem to be of little importance in this case whether a personal liability was created against appellants upon the performance of the work or not, if such liability was not enforceable except on the contingency that they should receive the money from the contract company to pay for such work, since they could be called upon to discharge the liability only when, by the happening of the contingency, they were able to do so out of the funds so received, and, since in no other event would the appellees be entitled to maintain this action.   But we cannot agree with counsel that the contract is susceptible of such interpretation.   The language used clearly and explicitly makes the receipt of the money by appellants a condition precedent to any liability on their part to pay for the work; and when read in the light of the conditions that existed at the time the contract was made, and of the circumstance that the work was undertaken with knowledge on the part of appellees that the railway company and the Pacific Contract Company had no property or assets except the projected line of road, and that the only source from which money could be realized for its construction was the sale of the railway company's bonds, we think its evident intent and meaning was to exempt appellants from all personal liability, and obligate them to pay for the work done by appellees only in case they should receive the money for that purpose from the Pacific Contract Company.

Whether, therefore, this contingency has happened, is the important and controlling question in the case.   It is admitted that no money has been received by appellants under the contract; but it is insisted on behalf of appellees that, having elected to institute lien proceedings and recover judgment against the Pacific Contract Company for the full amount due them under the contract, and to bid in the railway property in satisfaction of this judgment, they have received money, or that which is its equivalent within the meaning of the

terms of the contract; and therefore, "the enforcement of appellees' claim, which before had been a contingent, became, at once an absolute right." This conclusion is predicated upon a false assumption of fact. The assertion that appellants exercised an election in the matter is not borne out by the facts or circumstances as they are disclosed by the record. They were confronted with a condition that admitted of no alternative. The line of railway had been completed; but no money had been realized as contemplated from the sale of the railway company's bonds. The railway company and the Pacific Contract Company were insolvent, and with no property or assets, save the railroad itself, which could be applied towards the satisfaction of the claims due for its construction. Under these circumstances, appellants were compelled to institute the lien proceedings or lose the only available means of securing their claim, and that of their subcontractors. The proceeding was wholly *in invitum* against the company, and was forced upon appellants by the exigencies of the case.

It will be conceded that if, without compulsion, appellants had accepted the roadbed, or any other property, from the Pacific Contract Company in lieu of money, the result would be as contended for by appellees; not because they had received money, within the meaning of the contract, but because of their own volition they elected to accept the property in lieu of money, and thereby precluded themselves from demanding or receiving money from the contract company; and by reason of this self-imposed disability to comply with, or carry out, the literal terms of the agreement on their part, they would become personally liable for whatever damages appellees would suffer thereby. But when, as in this case, they acted under duress of circumstances, and without the freedom of choice in acquiring title to the property, but accepted it as a *dernier resort* to protect the interests of all concerned, the reason for the imposition of a personal liability upon them does not exist, and this action is not maintainable upon this theory.

It is also urged that appellants, by paying for the labor

and material furnished the appellees, acknowledged that they were personally liable under the contract; and by including the amount of appellees' claim in the lien statement, and recovering judgment therefor, they are estopped from denying such liability. This claim we think is also untenable. The money for the labor and material was advanced under another provision of the contract, which gave appellants the option to do so in order to protect the property from liens therefor; and the Pacific Contract Company, being in the first instance answerable to them for all that was earned under the contract, we think it was incumbent upon them to include and enforce all claims for work done in constructing the road, in one foreclosure. Otherwise, these expenditures, as well as the amount due appellees, would have been lost, since appellees had waived the right to file and enforce a lien for their own protection.

Nor do we think that the mere satisfaction of appellants' claim against the Pacific Contract Company by the purchase of the property in question, constitutes in any sense a payment of money, within the meaning of the contract. If it may be said that the acquisition, by appellees, of the title to the property under the circumstances, was equivalent to the receipt of money within the meaning of the terms of the contract, certainly it should be regarded as the equivalent of money for the payment of appellees, and they should be required to accept their proportionate interest therein in payment for their claim. It was not only the right, but the duty of appellants, to secure the property and hold it for such future disposition as will best protect the interests of all concerned. And, in either view advanced, to impose upon them a personal liability, under the circumstances, would we think be grossly inequitable and unjust.

Our conclusion is, that under the facts as they appear from the pleadings in this case, this action is premature; and, while appellees may not be compelled, against their election, to accept an interest in the property, they certainly should be enjoined from prosecuting this or any other action against

appellants for the recovery of a personal judgment against them, until by the disposition of the property in question, appellants shall have realized money that appellees are entitled to, under the terms of the contract, as we have construed it. The judgment of the district court is accordingly reversed, and the cause remanded.

*Reversed and remanded.*

CHIEF JUSTICE HAYT dissents.

### ON REHEARING.

PER CURIAM. Upon the rehearing counsel for appellees, who tried the case in the district court and made the argument at the original hearing, has submitted a brief pointing out the alleged errors of this court in reversing the judgment. The re-examination of the record, the reading of all the printed arguments filed by appellees, and the exhaustive oral arguments, have not changed our views. We therefore adhere to our former conclusion for the reasons set forth in the opinion.

Had the present application been based solely upon alleged errors concerning the points previously decided, we should rest content by merely affirming our former ruling.

Since the original opinion was handed down, new counsel have entered an appearance for appellees, and while uniting with counsel originally, and still, in the case in asking for an affirmance of the judgment upon the same grounds previously urged, they have assigned in their printed briefs, and in oral argument have urged the same matters, that the judgment below should be affirmed, and base their contention upon a proposition which, for the first time, has been raised upon this rehearing. They now insist that by a fair construction of the contract there is imposed upon the defendants an unconditional liability, and that the only contingency relates to the time of payment; or, as expressed by them in other words: "If it may be seen from the pleadings that the time for payment may never happen upon which the liability is to attach,

then the law says that the liability attaches after a reasonable time.    That a reasonable time has elasped in this case is not and cannot be well questioned."

The appellants, upon the other hand, insist that the appellees have shifted their ground from that on which the case has previously been tried and determined both in the trial court and at the original hearing, and that a party may not thus change base.

From the language of counsel for appellees quoted in the original opinion it would seem clear that the case was tried upon the theory that the liability of the appellants was conditional, and that the contingency upon which the conditional liability became absolute happened before the suit was brought by reason of the receipt by defendants of the money or rather, its equivalent, due them under the contract.    The position assumed now, for the first time, upon rehearing, while the former one is not abandoned, is that the liability is wholly unconditional, and that payment is postponed for a reasonable time after the performance of the work.    It is strenuously insisted, however, that our interpretation of the quoted language of appellees' counsel does not fairly represent the position which they have maintained throughout the various hearings; but after a careful examination of the complaint and of the printed briefs, we are satisfied that our interpretation correctly defines it.    As corroboration of this conclusion we cite the following language taken from the opinion of the district court which appellees, themselves, have called to our attention:

" Under the theory upon which this cause is instituted and presented to the court there is but one question for the court to determine, viz: Have the defendants herein been paid by the Pacific Contract Company for the performance of the work mentioned in the contract?    If they have not they never will be.    Of their own volition they instituted certain proceedings which culminated in the sale of certain property under execution under and by virtue of a judgment obtained by the defendants herein.    At which said sale defendants

took such steps as to forever extinguish and satisfy ·said claim as against the Pacific Contract Company. * * *

"We think the satisfaction of defendants' claim against the Pacific Contract Company was a payment thereof to all intents and purposes within the meaning of the contract."

That the new ground assumed for the first time now is radically and essentially different, is too clear for argument. But, say counsel, the rule is, even if the case was tried upon an improper theory, and the trial court gave an erroneous reason for a right conclusion, nevertheless, this court should affirm the judgment, if it can be done consistently with the case as made. This doctrine, however, is inapplicable to the question under consideration, in the light of the facts.

Conceding that the rule against a change of base applies to the appellants, it is contended by appellees that it has no application to them, but that they may take as many inconsistent positions as they see fit in their endeavor to sustain the judgment. If we should agree with them upon this proposition (which we do not), the distinction attempted to be drawn would not be applicable to the case now before us, for upon the original hearing in this court the ground now assumed by the appellees was not in any way called to the attention of the court, and we proceeded to dispose of the controversy upon the questions that were then presented for our consideration, which resulted in a ruling adverse to them. They now, having filed a petition for rehearing, which we granted, sustain towards the judgment reviewed the same relation that the appellants did on the original hearing to the judgment of the district court. The burden is upon them to show error in our decision, and with respect to it they are as appellants, and they should not, under well established rules of practice, be permitted to set up, for the first time, in their petition for rehearing, a ground which was not theretofore raised in the progress of the case. The authorities are uniform to this effect, and some of them we cite: *Weil v. Nevitt,* 18 Colo. 10; *Water Co. v. Irrigation Co.,* 24 Colo. 322; *Water Co. v. Tenny,* 24 Colo. 344; Elliott on Appellate Procedure, §§ 489, 490,

491, *et seq.; Noyes v. Brace et al.*, 9 So. Dak. 603 (70 N. W. Rep. 846); *Woodard v. Baird*, 43 Neb. 310 (61 N. W. Rep. 612); *R. R. Co. v. Bills*, 104 Ind. 13; *Callaway v. Mellett*, 44 N. E. Rep. 198; *Davis v. Jacoby*, 54 Minn. 144 (55 N. W. Rep. 908); *Beck v. Thompson*, 22 Nev. 419 (41 Pac. Rep. 1); *Blough v. Parry*, 144 Ind. 482 (43 N. E. Rep. 560); *Funk v. Rentchler*, 134 Ind. 75 (33 N. E. Rep. 898); *Merriman v. Chicago, &c., Ry. Co.*, 66 Fed. Rep. 663.

For the foregoing reasons our former decision is adhered to.