[3960.]

THE CITY OF DURANGO v. CHAPMAN.

1. TOWNS AND CITIES—WATER SUPPLY—POWER TO PROTECT.

Under subdivision 68 of section 4403, Mills' Ann. Stats., empowering municipal authorities to protect the water of the streams from which their water supply is derived from pollution, and for that purpose conferring jurisdiction for a distance of five miles above the point from which the supply is taken, a city or town has authority by ordinance to prohibit the keeping of any pigsty or slaughterhouse upon or near the stream, within five miles from where it takes its supply, the drainage from which is capable of contaminating or rendering the water impure ; and the fact that such pigsty or slaughterhouse was well kept for such place is no defense to a prosecution for violating such ordinance, as it is a matter of common knowledge that water running over the surface of such place, and reaching the stream, would render the water impure and unwholesome.

2. SAME—JURISDICTION.

Where a city passed an ordinance under subdivision 68, section 4403, Mills' Ann. Stat., for the protection of the stream above its source of water supply from pollution, the fact that there was another

municipal corporation located on the stream above the city passing the ordinance and taking its water from the same stream, and at a point which would give it jurisdiction over the same territory, is no defense to a violation of such ordinance, as the two municipal corporations would have coextensive jurisdiction to protect the common supply of water and a pollution of the stream would constitute an offense against each.

3. APPELLATE PRACTICE—REHEARING—NEW GROUNDS.

On petition for rehearing a party will not be permitted to set up new and different grounds in support of his petition from those set up on the original hearing. An objection that no exception was properly taken or preserved to the judgment of the trial court so as to authorize the appellate court to review the evidence will not be considered if raised for the first time by petition for rehearing.

*Error to the County Court of La Plata County.*

DEFENDANT in error was proceeded against before the police magistrate of the city of Durango, for the violation of section 3 of Ordinance No. 42 of the city. From a judgment of conviction, he appealed to the county court. The ordinance in question is entitled "An ordinance for the protection of streams above the city's source of water supply, and of the city's reservoir from nuisance." Section 3 provides that "the construction or keeping of any * * * pigsty * * * or any place or premises of whatever kind, the drainage from which is capable of contaminating or rendering water impure or unwholesome, is hereby prohibited upon the Animas river, or upon the banks thereof, from the dam at the head of Boulevard street of said city * * * to the distance of five miles northerly upon said river from said dam; * * * "

It also provides that the keeping or establishment of any places by its terms prohibited, is a nuisance, and any person violating the section shall, on conviction, be fined.

By the general laws of the state, municipal authorities are empowered to protect the water of the stream from which their water supply is derived from pollution, and for that purpose jurisdiction is conferred for the distance of five miles above the point from which such supply is taken, and authority conferred to enact all ordinances and regulations neces-

sary to carry that power into effect. Subdivision 68, sec. 4403, Mills' Ann. Stats.

The evidence establishes that the city takes its water supply from the Animas river; that defendant in error maintained a slaughterhouse and pigsty upon its banks within five miles above the point where such supply is diverted; that the slaughterhouse is located from 75 to 150 yards from the margin of the stream, varying somewhat according to the stage of water; that drainage from such place would flow into a slough which, in low water, appears to be separated from the main river by a bar, through which the water would find its way into the stream; that the pigsty extends down to the margin of the river; that defendant in error kept swine there which had access to the waters of the stream, and that drainage from this sty would pass directly into the river. It appears that the slaughterhouse was cleanly, for a place of that character.

Other sections of this ordinance provide that any person, within the distance of five miles above the point where the water supply of the city is diverted, who shall allow any offensive or unwholesome substance to remain upon his premises in such position that such substance, or the drainage therefrom, might be carried by natural causes into the river, or who shall permit to flow from any establishment any foul or contaminating fluid into such stream, shall be deemed guilty of a nuisance, and on conviction, be fined. It also appears that Animas city is located between the city of Durango and the point where defendant in error maintained his slaughterhouse and pigsty, and obtains part of its water supply from the Animas river. There is no evidence that the latter town has enacted any ordinances to protect its water supply from pollution. From a judgment discharging the defendant, the city brings the case here for review, on error.

Mr. T. J. JACKSON, for plaintiff in error.

Mr. O. S. GALBRAITH, for defendant in error.

MR. JUSTICE GABBERT delivered the opinion of the court.

On behalf of the defendant in error, his counsel urges that the section of the ordinance under consideration is illegal, for the reason that the municipal authorities had no power to declare a pigsty or slaughterhouse a nuisance *per se*, except they be maintained within the limits of the city or within one mile beyond. In support of this proposition, we are referred to subdivisions 51 and 53 of section 4403, *supra*, which in terms provide that the city council has authority to direct the location, and regulate the management of slaughterhouses and other designated places, and also to prohibit any offensive or unwholesome business within the limits of the municipality, or within one mile of its boundaries. This is not the material or decisive question under the undisputed facts, and it is unnecessary to determine it in this case. The legislature has clothed the municipal authorities with power to protect the stream from which the inhabitants of the city derive their supply of water from pollution, within prescribed limits. In pursuance of this power, an ordinance has been passed for that purpose. It must be reasonably construed, and given that interpretation, if possible, which will effect the object of its passage (1 Dillon's Municipal Corporations [4th ed.], 420), and in construing it, we must consider its provisions as a whole. The manifest purpose of the ordinance, as indicated by its title, is to protect the stream from pollution, from which the water supplied to the city for the use of the inhabitants is drawn. In sections other than the one under which defendant in error was prosecuted, it provides for the punishment of persons who shall permit any fluid which would render the waters of the stream impure, to flow into it from premises occupied by them, or who shall permit any substance to remain upon their premises within such distance of the stream that such substance, or the drainage therefrom, might fall, or be carried into the river. The section in question inhibits the construction or keeping of any pigsty or any place upon the bank of the river, the

drainage from which is capable of rendering the water of the stream impure or unwholesome. It was not the mere keeping of these places within prescribed limits which was the particular thing prohibited, but the drainage therefrom, which flowed or might flow into the river, was the danger which the ordinance sought to obviate. The evidence established that the pigsty and slaughterhouse maintained by defendant in error are within five miles above the point where the water supply of the city is diverted, and are so situated with respect to the stream from which this supply is drawn, that the drainage therefrom not only might, but actually did, flow into the stream. This, at least, is true with respect to the pigsty; and so with the drainage from the slaughterhouse or the surrounding premises, although it might first filter through the sands of the bar at the mouth of the slough. It also appears that the hogs confined in the yard had access to the waters of the river. The fact that these places may have been well kept is no defense, for it needs no evidence to demonstrate, that if water flowing over the surface of an enclosure in which swine are kept, or from a slaughterhouse or over the ground in its near vicinity, whether from natural causes or otherwise, reaches the stream from which the city draws its water supply, it will be rendered impure and unwholesome. Common knowledge teaches this would be the result, without proof. *North Chicago City R. Co. v. Town of Lake View,* 105 Ill. 207. These were the material facts, regarding which there is no conflict in the evidence, and it was error for the trial court to find the defendant not guilty. In disposing of this case upon the ground we do, we do not wish to be understood as deciding that the slaughterhouse and pigsty of defendant in error, by reason of their close proximity to the river, might not be declared nuisances *per se*, without extrinsic proof that they actually polluted the waters of the stream. *North Chicago City R. Co. v. Town of Lake View, supra.*

It is also claimed by defendant in error, that because the town of Animas city takes its supply of water from the Animas river at a point which would give the latter jurisdiction

to also punish defendant for the same offense for which he is being proceeded against in this case, that the city of Durango cannot exercise jurisdiction for this purpose. In support of this claim, the doctrine is invoked, that there cannot be, at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdictions and privileges. This proposition has no application to the case at bar; there is no evidence that Animas city has passed an ordinance which would render defendant in error liable for the pollution of the stream, by drainage from his slaughterhouse and pigsty; and even if it had, that would be no defense to this action, for in such case his act in polluting the waters of the river would constitute two different offenses against two distinct sovereignties. *McInerney v. City of Denver*, 17 Colo. 302; *Hughes v. People*, 8 Colo. 536; *People v. Reims*, 20 Colo. 489.

Any other conclusion would result in the anomaly, that if two municipalities were so situated with respect to each other, secured their water supply from the same source, and at such relative points that the jurisdiction of each for the purpose of preventing pollutions was coextensive, the common supply could be polluted with impunity within such territory. The judgment of the county court is reversed, and the cause remanded for further proceedings, in accordance with the views herein expressed.

*Reversed and remanded.*

### ON PETITION FOR REHEARING.

PER CURIAM. In petition for rehearing filed by defendant in error, our attention is called to the fact that no exception was properly taken or preserved to the judgment in this case, and for that reason we are precluded, under repeated decisions, from reviewing the evidence for the purpose of determining its sufficiency to support the judgment of the trial court, and as the judgment below was reversed for the reason that the facts established by the testimony clearly showed that it was erroneous, a rehearing should be granted.

Counsel concede that in their brief our attention was not called to the point now insisted upon, but state that it was suggested in the oral argument.   The party asking for a rehearing will not be permitted to set up new and different grounds in support of his petition from those urged by him in the original hearing.   *Orman et al. v. Ryan Bros.*, 25 Colo. 383.   We are not prepared to say that counsel for defendant in error, in his oral argument, did not refer to the absence of an exception to the judgment of the trial court, although we do not recall it; but where entirely new questions are raised on such argument, from those contained in the printed briefs filed, counsel urging them, if they do not wish to take the chances that they be overlooked by the court, must supplement such argument by either printed or typewritten brief, calling our attention to such points as they desire to have considered not contained in their original briefs, for it is manifestly impossible for us to remember points made in a case which are not thus presented.   No such briefs were filed in this case by either counsel.   For these reasons, it is too late now to urge that no exception was taken to the judgment of the lower court.

We think that the other questions raised by the petition for rehearing have been disposed of correctly in the main opinion in the case.

*Petition for rehearing denied.*