No. 20432.

CHARLES ILFELD COMPANY v. RAYMOND C. TAYLOR, ET AL.

(397 P.2d 748)

Decided December 28, 1964.

WILLIAM S. EAKES, E. B. HAMILTON, for plaintiff in error.

GEORGE R. ARMSTRONG, WILLIAM A. THOMPSON, JR., for defendants in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

DID the trial court err in determining that the provision of the contract, requiring Charles Ilfeld Company to maintain books of account and to make two-monthly inventories for Shelly and Blanche Allen and to furnish Raymond C. and Viola M. Taylor with statements of them, created material and essential conditions, the fulfillment of which was necessary in order to bring into being enforceable rights against the Taylors? Did the trial court err when it, in effect, held that the language of the provision was conditional rather than promissory in nature?

Affirmative answers to these quetsions will necessitate a reversal of that part of the judgment in this case (which is pending before us on writ of error attacking said judgment) entered against the Company, and in favor of the Taylors, on its complaint brought against the Allens and the Taylors.

The Company filed a complaint containing three claims for relief. The first claim was against the Allens on their promissory note, alleging that there was a balance due of $5,005.00, together with interest from July 1, 1959. The second claim was against the Taylors for breach of contract, based upon the Taylors' failure to subordinate the debt owed them by the Allens to the debt owed the Company by the Allens. The third claim was based upon the failure of the Taylors to comply with the bulk sales law when they took back the stock of merchandise and fixtures of a grocery business which the Allens had agreed to purchase from the Taylors.

Besides the general issue, the Taylors affirmatively defended against the second and third claims in several respects. As defenses to the second claim, they alleged that the Company had breached the agreement, and was guilty of waiver, estoppel and laches barring the relief it sought. As to the third claim, the Taylors admitted

receiving the merchandise and crediting the Allens' note therefor. They claimed that such an application of merchandise was without the purview of the Colorado Bulk Sales Law.

The issues were tried to the court. At the conclusion of the trial, the court entered judgment on the first claim in favor of the Company and against the Allens for $6,968.96, interest, and attorney's fees. Judgments adverse to the Company and in favor of the Taylors were entered on the second and third claims, and it is these unfavorable judgments which are the subjects of attack on this review.

A tripartite written agreement had been entered into on September 30, 1958. By its terms the Taylors were the sellers and the Allens the buyers of the inventory of merchandise in the Taylors' IGA Market, located in Cortez, Colorado. It required the Allens to make an initial payment of $10,000.00, and the Company agreed therein to advance $7,000.00 as a portion of said payment.

A recital that the Company desired to be secured for such advance appears in the agreement. Most of the agreement is concerned with the undertakings of the Taylors and the Allens, but two paragraphs involved the Company. It is these paragraphs in the operative part of the contract that have an important bearing on the resolution of this proceeding.

The parties agreed that:

"2. Sellers agree to *subordinate the said obligation of Purchasers for the balance of the purchase price* described in Paragraph 1 (b) above, to the indebtedness of Purchasers to Charles Ilfeld Company in the sum of $7000.00, which sum Charles Ilfeld Company agrees to advance to Purchasers for the purpose of financing that portion of the down payment provided for herein, and which indebtedness will be evidenced by a Promissory Note in said sum of $7000.00, dated October 1, 1958 payable at the rate of $285.00 per month beginning Novem-

ber 1, 1958 with interest at 6% per annum payable quarterly beginning February 1, 1959, in addition to said principal payments."

"7. Charles Ilfeld Company shall maintain the books of account for the Purchasers, and shall *inventory* the stock of merchandise for Purchasers *every two months*, rendering statements of said inventory and accounts to Sellers." (Emphasis supplied.)

The Allens took over the grocery business on October 1, 1958, and from the beginning it was an ill-starred venture. It appeared that the Allens not only were indebted on the contract to the Company and the Taylors, but had incurred a substantial indebtedness to other businesses. The worsening condition of the business caused the Taylors and the Allens to act.

On August 1, 1959, the Taylors took back the store. At that time, the Allens owed the Taylors on the contract the sum of $23,677.45, and, as part of the transaction of taking back the store, this indebtedness was cancelled and the Taylors paid the Allens $9,000.00 additionally. The Allens also owed the Company $5,005.00 and interest from July 1, 1959.

Mr. Taylor testified that he had received copies of three inventories. He further testified that he had not received any statement of Allens' accounts.

Between October 1, 1958, and August 1, 1959, the period during which the Allens operated the store, four two-monthly inventories should have been made. In due time, statements thereof should have been given to the Taylors.

The trial court found that:

"* * * One of the obligations undertaken in such agreement (Paragraph 7) was 'Charles Ilfeld Company shall maintain the books of account for the Purchasers (Allens) and shall inventory the stock of merchandise for Purchasers every two months, rendering statements of said inventory and accounts to Sellers.' These were, in

our opinion, *material and essential conditions necessary to the enforcement* by plaintiff of its asserted rights under the contract." (Emphasis supplied.)

■ The intention of the parties in making a contract controls. Such intention ordinarily should rest on the good sense and plain understanding of the words used, and the acts directed to be performed or forborne by such words. *Jennings v. Brotherhood Acc. Co.*, 44 Colo. 68, 96 Pac. 982, 130 Am.S.R. 109, 18 L.R.A.N.S. 109.

■■ A stipulation in a contract may be a condition or promise, depending on the intention of the parties. An intent to create a condition in a contract must appear expressly or by clear implication. *Braddy v. Elliott*, 146 N.C. 578, 60 S.E. 507, 16 L.R.A.N.S. 1121; see *Drennan v. Star Paving Co.*, 51 Cal.2d 409, 333 P.2d 757.

■ In cases of doubt as to the intention of the parties, courts resolve the doubt in favor of an interpretation making the engagement a promise rather than a condition. *Ross v. Harding*, 64 Wash.2d 231, 391 P.2d 526; *Stellar v. Thomas*, 232 Minn. 275, 45 N.W.2d 537; Restatement, Contracts, § 261, p. 375; 5 Williston, Contracts (3rd ed.) § 665, p. 133. And such rule of construction is founded on a policy of avoiding, if possible, forfeitures. Violations of conditions usually cause forfeitures, whereas breaches of contract can be compensated by damages. *Northwestern University v. Wesley Memorial Hosp.*, 290 Ill. 205, 125 N.E. 13; *Woodruff v. Woodruff*, 44 N.J.Eq. (17 Stew.) 349, 16 Atl. 4, I L.R.A. 380; *Green County v. Quinlan*, 211 U.S. 582, 29 S.Ct. 162, 53 L.Ed. 335; 5 Page on Contracts 4524, § 2579. To frown upon forfeitures is part of the judicial policy of this state, too. *Reliance Life Ins. Co. v. Wolverton*, 88 Colo. 353, 296 Pac. 793.

In decisions and law texts, a number of tests have been enunciated for determining whether courts are dealing with promises or conditions. Under any of these tests,

it becomes apodictically apparent that in this case we are dealing with promises and not with conditions.

■ A frequently applied test marking the distinction between a promise and a condition is that laid down in Restatement, Contracts, p. 373, § 260. It reads as follows:

"If in an agreement words that state that an act is to be performed purport to be the words of the person who is to do the act, the words are interpreted, unless a contrary intention has been manifested, as a promise by that person to perform the act. If the words purport to be those of a party who is not to do the act they are interpreted, unless a contrary intention has been manifested, as limiting the promise of that party by making performance of the act a condition."

■ Another test applied in a number of cases relates to subsidiary provisions in a contract, provisions supplementary to the ruling design of the contract. By it a court determines whether the particular stipulation goes to the root of the contract so that a failure to perform it would render the performance of the rest of the agreement by the plaintiff a thing different in substance from what the defendant has agreed to, or whether it merely partially affects it and may be compensated for in damages. *Tichnor Bros. v. Evans,* 92 Vt. 278, 102 Atl. 1031, L.R.A. 1918C 1025; *Bettini v. Gye,* 1 Q.B.D. 183 (1876); see *John Hetherington & Sons v. Wm. Firth Co.,* 212 Mass. 257, 98 N.E. 797; *Boehl v. Maidens,* 102 Oh. App. 211, 139 N.E. (2d) 645; *Crampton v. McLaughlin Realty Co.,* 51 Wash. 525, 99 Pac. 586.

The contract covered two main subjects, one the purchase and sale of an inventory of merchandise between the Allens and the Taylors, and the second between the Company on the one hand, and the Taylors and Allens on the other, for the financing of the initial payment on the contract of purchase and sale. These were the dominant purposes of the tripartite written contract. The matter of inventories and books of account, covered by

paragraph 7, was supplementary and subsidiary to the dominant purposes mentioned. As such, paragraph 7 must be construed as containing promises.

The words used in context in paragraph 7 are readily construable as creating promises, and when such seems conformable to the intention of the contracting parties, courts are inclined favorably to such construction. Non-fulfillment would not operate in such manner as to effect a forfeiture. *Woodruff v. Woodruff,* supra.

██ The Company undertook to make two-monthly inventories, and it may be construed that within a reasonable time thereafter a statement of each inventory would be given to the Taylors. It also undertook to maintain the books of account for the Allens, and to supply the Taylors with statements of the result thereof. No time is set for performance of these latter matters, and where such circumstance is present, the law provides that performance shall be done within a reasonable time. *Shull v. Sexton,* 154 Colo. 390 P.2d 313.

Three statements of inventories were afforded the Taylors. Failure to supply the fourth and to render statements of accounts were breaches of promises if, by application of the reasonable time doctrine, they became due, and the Company would then be vulnerable to a suit for such damages as the Taylors may have sustained by reason of such non-performance. See *Gomer v. McPhee,* 2 Colo. App. 287, 31 Pac. 119.

We hold that the trial court erred in determining that the Company failed to perform "material and essential conditions necessary to the enforcement" of the Company's rights under the contract. It could have been made to respond in damages for the breaches, if any, of its promises to supply statements of accounts and statements of inventories.

The judgment in favor of the Taylors is reversed, and the trial court is directed that, in the event of a retrial of the issues between the Company and the Taylors, such

212

trial be had in manner consonant with the views herein expressed.

Mr. Chief Justice McWilliams and Mr. Justice Pringle concur.