Robert D. BALZANO, (Daniel J. Colaiannia, Successor in Interest), Special Deputy Commissioner of Insurance of Colorado and Receiver in Liquidation of Aspen Indemnity Corporation, and A.I.C. Agency, Inc., Plaintiff–Appellee,

v.

BLUEWATER INSURANCE LIMITED (Tennessee Insurance Company, its Successor in Interest); Camelback Reinsurance Underwriter, Inc., on Behalf of Imperial Casualty and Indemnity Company; First Horizon Insurance Co. and American Centennial Insurance Company, Defendants–Appellants.

No. 89CA0394.

Colorado Court of Appeals,
Div. I.

April 26, 1990.

Rehearing Denied June 7, 1990.

Certiorari Granted Dec. 10, 1990.

Frank & Finger, P.C., Thomas Frank, Evergreen, for plaintiff-appellee.

Sherman & Howard, Joseph J. Bronesky, F. Brittin Clayton III, Denver, for defendants-appellants.

Opinion by Judge SILVERSTEIN *.

Defendants, Bluewater Insurance Ltd. (Tennessee Insurance Company, its successor in interest), Camelback Reinsurance

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

Underwriter, Inc., on behalf of Imperial Casualty and Indemnity Co., First Horizon Insurance Co., and American Centennial Insurance Co. (reinsurers), appeal the summary judgment entered in favor of plaintiff, Robert Balzano, (Daniel J. Colaiannia, successor in interest), Special Deputy Commissioner of Insurance of Colorado, the receiver in liquidation of insolvents, Aspen Indemnity Corp. and A.I.C. Agency, Inc. We affirm.

Defendants are reinsurers who by contract had assumed risks underwritten by Aspen. Aspen agreed to pay quarterly premiums in advance.

Beginning in 1984, Aspen experienced financial difficulties, and it failed to pay premiums to its reinsurers. In September 1984, the Commissioner of Insurance determined that Aspen was insolvent and ordered the Attorney General to commence a liquidation action pursuant to § 10–3–501, et seq., C.R.S. (1987 Repl.Vol. 4A).

Plaintiff, as Aspen's receiver, filed a declaratory judgment action, requesting a determination of the amount of reinsurance proceeds due from these defendants as well as other of Aspen's reinsurers. In 1986, plaintiff entered into a settlement agreement with the other reinsurers which permitted them to set off the amount of unpaid reinsurance premiums on claims that Aspen had paid to its insureds on or before the date of insolvency. However, these defendants refused to sign that agreement, contending that they were entitled to set off premiums on other reinsurance claims for which they were liable, and which had been unpaid by Aspen.

The plaintiff and defendants filed cross-motions for summary judgment to determine whether the defendants had the right to set off the unpaid premiums. The court granted plaintiff's motion for summary judgment, in which the right of setoff was denied.

## I.

Defendants contend they have an equitable right to setoff for the unpaid premiums. We disagree.

This issue is controlled by the Uniform Insurers Liquidation Act, § 10–3–501, et seq., C.R.S. (1987 Repl.Vol. 4A) (UILA), which must be interpreted in conjunction with other pertinent provisions of § 10–3–101, et seq., C.R.S. (1987 Repl.Vol. 4A) (the insurance code). *Alias Smith & Jones, Inc. v. Barnes,* 695 P.2d 302 (Colo. App.1984).

Section 10–3–118, C.R.S. (1987 Repl.Vol. 4A) covers the effect of reinsurance on the ceding (primary) insurer's reserves, and provides in subsection (4):

> "No credit shall be allowed as an asset or a deduction from liability to any ceding insurer for reinsurance....
>
> ....
>
> "(b) Unless the reinsurance is payable by the reinsurer while in force on the basis of the contractual liability of the ceding insurer under the contracts reinsured *without diminution* due to the insolvency of the ceding insurer, or
>
> "(c) Where the reinsurance contract does not result in the absolute transfer to the reinsurer of risk or liability...." (emphasis supplied)

Here the reinsurance contracts qualified as a credit to the ceding insurer.

Section 10–3–507(3), C.R.S. (1987 Repl. Vol. 4A) of the UILA lists the priorities of distribution of the general assets of an insolvent insurer in liquidation as follows: (a) administration expenses; (b) wages and commissions; (c) claims by policy holders, beneficiaries, and insureds and liability claims; and (d) "all other claims not falling within any other priority under this section."

Even if we assume that a right of setoff existed in the absence of a statute, the provisions of § 10–3–118(4), C.R.S. (1987 Repl.Vol. 4A) requiring that the reinsurance agreement obligated the reinsurer to pay the contractual liability of the ceding insurer *without diminution* in the event of primary insurer's insolvency abrogates any right of setoff to the reinsurer. In *Benham v. Pryke,* 744 P.2d 67 (Colo. 1987), the supreme court held that the

UILA required that, upon the insolvency of the primary insurer, the reinsurer would "pay the liquidator or receiver of the primary insurer, *based on the liability of the primary insurer.*" (emphasis added) Any setoff would amount to a diminution of the obligation, and would grant the reinsurer a preference in violation of the priorities prescribed in § 10–3–507(3).

 Colorado does not recognize a provision in a contract as a condition precedent unless clearly so identified, *Security Mutual Casualty Co. v. Century Casualty Co.,* 531 F.2d 974 (10th Cir.1976). When, as here, the reinsurer does not exercise its contractual right to terminate the agreement, but elects to continue its coverage, the obligation to pay premiums must be treated as a covenant, the breach of which gives the reinsurer a claim against the general assets of the ceding insurer. *See Succession of Barrow,* 176 La. 42, 145 So. 262 (1932). Such a claim does not fall within the ambit of the priorities specified in § 10–3–507(3)(a), (b) and (c) and, therefore, is not entitled to preferential treatment.

## II.

 Defendants next argue that the requested setoff amounts are not part of the general assets of Aspen, but rather are security for Aspen's debt, against which they could execute. They contend that their claimed setoffs are funds "encumbered for the security or benefit of specified persons" and, thus, are not part of the "general assets" of Aspen, pursuant to § 10–3–502(5), C.R.S. (1987 Repl.Vol. 4A). We do not agree.

Secured claims are defined in § 10–3–502(10), C.R.S. (1987 Repl.Vol. 4A), as "any claim secured by mortgage, trust deed, pledge, deposit as security, escrow, or otherwise, but not including special deposit claims or claims against general assets." The unpaid premiums do not meet any of these criteria, and therefore, the reinsurers' claims do not qualify as secured claims.

We find no merit in the reinsurers' final assertion of error.

Judgment affirmed.

PIERCE and PLANK, JJ., concur.