**MAIN ELECTRIC, LTD.; and Connie J. Sullivan–Brown d/b/a C.J. Masonry, Petitioners,**

v.

**PRINTZ SERVICES CORPORATION, a Colorado corporation, d/b/a T.L. Printz Constructors, Respondent.**

No. 97SC601.

Supreme Court of Colorado, En Banc.

March 15, 1999.

· Warren, Mundt & Martin, P.C., Robert B. Warren, Colorado Springs, Colorado, Attorneys for Petitioner Main Electric, Ltd.

Hendricks, Hendricks & Shakes, P.C., David L. Shakes, Davyne A. Ryals, Colorado Springs, Colorado, Attorneys for Petitioner Connie J. Sullivan–Brown d/b/a C.J. Masonry.

Holland & Hart, LLP

David S. Prince, Elaine H. Turner, Colorado Springs, Colorado, Attorneys for Respondent.

Hall & Evans, L.L.C., Jeffrey B. Stalder, Denver, Colorado, Attorneys for Amicus Curiae R.N. Robinson & Son, Inc.

Woodrow & Gruskin, Professional Corporation, Mark D. Gruskin, Denise LaBier Pilkington, Denver, Colorado, Attorneys for Amicus Curiae American Subcontractors Association.

BENDER, Justice.

In this case we interpret the payment provisions of a construction contract to require a general contractor to pay a subcontractor even though the owner has failed to pay the general contractor. This provision is referred to as a "pay-when-paid" clause. We hold that the "when" of this clause is not a contingency, but rather means that payment may be delayed. We decline to find that this clause is a "pay-if-paid" clause that excuses the general contractor's obligation to the subcontractor if the owner does not pay.

In *Printz Services Corp. v. Main Electric, Ltd.*, 949 P.2d 77 (Colo.App.1997), the court of appeals held that the relevant language in the construction contract between the general contractor and a subcontractor was a pay-if-paid clause which barred the subcontractor from receiving payment from the general contractor because the owner became insolvent and never paid the general contractor. We reverse on this issue. We construe the

relevant payment phrase in this contract, that the subcontractor would be paid "provided like payment shall have been made by owner to contractor," to be insufficient to constitute a condition precedent that results in shifting the risk of the owner's nonpayment from the general contractor to the subcontractor. We hold that in order to create a condition precedent, the language of the parties' agreement must clearly express their intent that the subcontractor is to be paid only *if* the owner first pays the general contractor. Thus, we hold that the payment clause in this contract constitutes a pay-when-paid clause – that is, an unconditional promise by the general contractor to pay its subcontractor even if the owner becomes insolvent.

As part of this case, a second subcontractor sought to recover from the same general contractor based upon an implied oral contract. We agree with the analysis of the court of appeals that the second subcontractor's claim is not ripe for appellate review because the trial court did not make findings of fact concerning the terms, if any, of the payment clause of their oral agreement. Hence, with respect to the court of appeals' opinion, we reverse in part and affirm in part and return this case to that court with directions to remand this case to the trial court for further proceedings consistent with this opinion.

## I.

### Facts and Proceedings Below

Respondent Printz Services Corporation was the general contractor on a casino construction project in Cripple Creek, Colorado. Petitioners C.J. Masonry and Main Electric were subcontractors on the project. The relationship between Printz and C.J. Masonry was governed by a preprinted form contract prepared by Printz, the general contractor. The form contains the following pertinent payment provisions:

3. SUBCONTRACT AMOUNT. In consideration of the faithful performance of the covenants and agreements herein, ... Contractor agrees to pay, or cause to be paid, Subcontractor ... at the times and in the manner following in Articles 4 and 5.

4. PROGRESS PAYMENTS.

. . . .

D. Contractor shall make payment on or before the 25th day of the next month following receipt of the Payment Request provided like payment has been made by Owner to Contractor.

. . . .

5. FINAL PAYMENT. Contractor shall make final payment to Subcontractor after work is complete and accepted by Owner and Architect provided like payment shall have been made by Owner to Contractor. . . .

Main Electric did not sign a written form contract but agreed orally to work for Printz.

Before the project was complete, the owner became insolvent and lost the property in a deed of trust foreclosure. The owner failed to pay Printz, and Printz in turn failed to pay its subcontractors. C.J. Masonry and Main Electric both sought payment for breach of contract against the general contractor. Printz claimed in defense that it was obligated to pay its subcontractors only *if* it was first paid by the owner.

The trial court interpreted the payment clause "provided like payment shall have been made by Owner to Contractor" in C.J. Masonry's contract to be a promise by Printz to pay the subcontractor *when* and not *if* the general contractor was paid by the owner. In the trial court's view, the general contractor remained unconditionally obligated to pay the subcontractor provided the work was performed. The trial court ruled that Printz must pay C.J. Masonry regardless of the owner's insolvency.

Concerning Main Electric's claim, the trial court found that although Printz and Main Electric did not execute a written agreement, Main Electric had performed valuable services for Printz. Ruling that an implied contract existed between the two, the court awarded damages to the subcontractor under a quantum meruit theory.

The court of appeals reversed the trial court on both subcontractors' claims. *See Printz Servs. Corp.*, 949 P.2d at 79. It held

that the contract between Printz and C.J. Masonry created a condition precedent rather than a promise to pay, relying substantially on language in *Orman v. Ryan*, 25 Colo. 383, 55 P. 168 (1897), in which a similarly worded clause in a construction contract was referred to as a condition precedent. *See id.* at 388, 55 P. at 170. Thus, the court of appeals ruled Printz was not obligated to pay C.J. Masonry. *See Printz Servs. Corp.*, 949 P.2d at 81–82.

Turning to Main Electric's claim, the court of appeals reasoned that since both parties conceded that they had an express oral agreement, an award based on a theory of quantum meruit was inappropriate. The court noted that ordinarily the distinction between enforcement of an oral contract and a quantum meruit award would make no substantive difference and would not require remand. However, because the parties disputed whether the payment clause formed part of their express oral agreement, and since the trial court did not resolve this disputed fact, remand to the trial court was appropriate.

We granted certiorari to determine whether the holding in *Orman* controls this case and whether the relevant contract provisions between the general contractor and the subcontractor should be interpreted as creating a condition precedent.[1]

## II.

### Orman Does Not Govern Our Analysis

Because the parties and the court of appeals rely so heavily upon *Orman*, we first examine that case in some detail. In *Orman*, the subcontractor agreed to perform trestle work on a railroad construction project with the knowledge that the railroad company had no assets, and only by selling its own bonds could the railroad company finance the con-

struction. *See Orman*, 25 Colo. at 388, 55 P. at 170. The contract provided that the general contractor was to pay the subcontractor after the general contractor received the money from the owner:

> During the progress of the work, and until it is completed, there will be a monthly estimate ... of the ... value of the work done during the month, ... eighty-five percent of which value will be paid [to the subcontractor] as soon after the 15th day of the succeeding month as the [general contractor] shall have *received the money* for said work from the [owner].

*Id.* (emphasis added).

The railroad company failed to sell any bonds and became insolvent. It never paid the general contractor which filed lien proceedings to recover against the company. The general contractor, in turn, did not pay the subcontractor for its work, arguing that it had not been paid by the railroad company; therefore, under the terms of the contract, it was not obligated to pay the subcontractor. The subcontractor then brought an action against the general contractor contending that by filing lien proceedings against the railroad company, the general contractor had "received money" and was therefore obligated to pay the subcontractor.

The legal issue decided in this case was whether, when the general contractor filed lien proceedings against the insolvent owner, it "received money" as that term was defined by the contract. *See Orman*, 25 Colo. at 387, 55 P. at 170. The subcontractor's theory of recovery at trial and on appeal was that the relevant contract payment clause established a contingency or a condition precedent that had in fact occurred. *See id.* at 392, 55 P. at 171. The sole litigated issue was whether this contingency took place. On appeal, the *Orman* court reversed, holding that when the general contractor filed a lien against the

1. The issues presented to us in the parties' petition for certiorari are as follows:

1) Whether the court of appeals erred in interpreting this court's decision in *Orman v. Ryan*, 25 Colo. 383, 55 P. 168 (1897), when such interpretation places Colorado in the distinct minority of state and federal courts that have examined the pay-when-paid clause issue, when such interpretation is inconsistent

with a prior decision of another panel of the court of appeals and the facts of this case, and when such interpretation is inconsistent with the announced public policy of this state.

2) Whether the court of appeals erred in adopting the rationale of *Orman v. Ryan*, 25 Colo. 383, 55 P. 168 (1897), in upholding the pay-when-paid clause in a construction subcontract.

owner's property, it had not "received money" as that term was defined in the contract. *See id.* at 387, 55 P. at 170.

■ In its opinion, the *Orman* court stated that the language in the contract was a condition precedent to the subcontractor's payment:

> The language used clearly and explicitly makes the receipt of the money by [the general contractor] a condition precedent to any liability on their part to pay for the work ... and obligate[s] them to pay for the work done by [the subcontractor] only in case they should receive the money for that purpose from the [owner].

*Id.* at 388, 55 P. at 170. However, this statement is conclusory and made without analyzing the contract terms and appears as dictum.[2] The *Orman* court's interpretation of the contract focussed solely on the parties' understanding when they entered into their agreement. The court specifically noted that, at this time, the subcontractor and general contractor understood and agreed to shift the risk of the owner's nonpayment from the general contractor to the subcontractor:

> [W]hen [the language of the contract is] read in the light of the conditions that existed at the time the contract was made, and of the circumstance that the work was undertaken with knowledge on the part of appellees that the railway company and the Pacific Contract Company had no property or assets except the projected line of road, and that the only source from which money could be realized for its construction was the sale of the railway company's bonds, we think its evident intent and meaning was to exempt appellants from all personal liability.

*Id.*

After the *Orman* court announced its opinion, the subcontractor argued for the first time in its petition for rehearing that the contract created an unconditional obligation on the part of the general contractor to pay its subcontractors. *See id.* at 393, 55 P. at 172. The *Orman* court refused to consider

this contention because this new theory of recovery deviated from the theory upon which the case was tried. *See id.* at 392, 55 P. at 171. Thus, we conclude that the *Orman* dictum does not control our analysis here.

### III.

*The Payment Provision in this Contract is*

*Not a Pay–if–Paid Clause*

■ We now turn to address the interpretation of the payment clause in the contract between Printz and C.J. Masonry. Initially, we note that the interpretation of a contract is a question of law which we review de novo. *See Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994).

■ We begin our analysis by reviewing basic principles of contract interpretation. The parties' intention when drafting a contract governs the interpretation of that contract. *See Centennial Enter. v. Mansfield Dev. Co.*, 193 Colo. 463, 464, 568 P.2d 50, 51 (1977). A contract term can be interpreted as either a condition precedent or a promise to perform depending on the parties' intent. *See Charles Ilfeld Co. v. Taylor*, 156 Colo. 204, 209, 397 P.2d 748, 750 (1964). In other contexts we have followed the rule that a condition precedent in a contract is not favored and will not be given effect unless established by clear and unequivocal language. *See id.; Balzano v. Bluewater Insurance Ltd.*, 801 P.2d 1, 3 (Colo.App.1990). If there is any doubt as to the parties' intention, we interpret a clause in a contract as a promise rather than a condition. *See Ilfeld*, 156 Colo. at 209, 397 P.2d at 750. This rule of contract interpretation expresses the recognized policy of avoiding the harsh results of forfeiture against a party who has no control over the occurrence of the condition. *See Rohauer v. Little*, 736 P.2d 403, 409 (Colo.1987); *Ilfeld*, 156 Colo. at 209, 397 P.2d at 750. As we stated in *Ilfeld*:

> The intention of the parties in making a contract controls. . . . In cases of doubt as to the intention of the parties, courts re-

---

2. Dictum is not the law of the case and is not controlling precedent. *See People ex rel. Galla-*

*gher v. District Court*, 666 P.2d 550, 553 (Colo. 1983).

solve the doubt in favor of an interpretation making the engagement a promise rather than a condition. And such rule of construction is founded on a policy of avoiding, if possible, forfeitures.... To frown upon forfeitures is part of the judicial policy of this state, too.

*Ilfeld,* 156 Colo. at 209, 397 P.2d at 750–751 (citations omitted).

Although we have not yet applied this reasoning to conditions precedent in payment clauses of a construction contract, we believe that our general rule of contract interpretation applies with equal force in that context. If a payment provision such as the one here creates a condition precedent, then the subcontractor will forfeit payment for work performed due to the occurrence of a condition—the owner's insolvency—over which the subcontractor has no control. *See R.N. Robinson & Son, Inc. v. Ground Improvement Techniques & Fireman's Fund Ins. Co.,* 31 F.Supp.2d 881, 886 (D.Colo.1998) (applying Colorado law) ("[C]onditions precedent create a risk of forfeiture, even when the party against whom the condition operates has no control over whether the condition is met.").

Typically, a subcontractor looks to the general contractor for payment and not the owner. *See Thomas J. Dyer Co. v. Bishop Int'l Eng'g Co.,* 303 F.2d 655, 660 (6th Cir.1962). Therefore, the subcontractor need not factor in the risk of nonpayment by the owner. *See Robinson,* 31 F.Supp.2d at 886; *Peacock Constr. Co. v. Modern Air Conditioning Inc.,* 353 So.2d 840, 842 (Fla.1977). If the risk of the owner's nonpayment is to be shifted from the general contractor to the subcontractor, then this shift must be clearly articulated in the agreement.

With the principle in mind that we will interpret a clause as a promise rather than a condition unless the language of the contract explicitly mandates otherwise, we analyze the relevant terms of this contract. Printz argues that the contract's terms, that the general contractor will pay its subcontractor "provided like payment shall have been made by owner to contractor," establishes a condition precedent requiring payment by the owner before payment to the subcontractor. We are not persuaded.

Although the payment clause may be read to support the argument that the parties intended the subcontractors to be paid only if the owner paid the general contractor first, this clause contains no language reflecting any intent of the parties to shift the risk of the owner's nonpayment from the general contractor to the subcontractor. There is no express acknowledgement by the subcontractor that it, rather than the general contractor, agrees to assume the risk of the owner's nonpayment.[3] The "provided" clause does not indicate that the parties reasonably anticipated the possibility that the owner might not pay and therefore specifically addressed this contingency.[4] The payment clause contains no specific language creating a contingency that must occur before payment must be made by the general contractor.

■ We conclude that the payment clause here leaves room for reasonable argument by both the general contractor and the subcontractor as to whether the parties intended to shift the risk of the owner's nonpayment from the general contractor to the subcontractor. Applying our rule interpreting a clause as a promise rather than a condition if there is any doubt of the parties' intention, we conclude that this payment clause is a pay-when-paid clause. It created a promise to pay the subcontractor that remains unconditional, although payment may be delayed because of the owner's failure to pay the

---

3. Although courts in other jurisdiction do not require the exact words "condition precedent," they hold that to create such a condition there must exist some provision in the contract clearly specifying that the subcontractor assumes the risk of the owner's nonpayment. *See Hatzel & Buehler, Inc. v. Lovisa Constr. Co., Inc.,* No. CV-92–384, 1993 WL 276971, at *4 (E.D.N.Y. July 20, 1993) (not reported in F.Supp.).

4. In the only other reported decision we found that interprets a construction contract that includes the word "provided" in its payment provision, the Louisiana Court of Appeals held that a condition precedent was created only because there existed independent language in the contract indicating that the parties recognized and intended to address the possibility of owner insolvency. *See Imagine Constr., Inc. v. Centex Landis Constr. Co., Inc.,* 707 So.2d 500, 502 (La.App.1998).

general contractor. To create a pay-if-paid clause in a construction contract, the relevant contract terms must unequivocally state that the subcontractor will be paid only if the general contractor is first paid by the owner and set forth the fact that the subcontractor bears the risk of the owner's nonpayment.[5] That required precision and clarity is missing here. Hence, we hold that the payment clause of this construction contract does not expressly reflect the parties' intent to shift the risk of the owner's nonperformance from the general contractor to the subcontractor with sufficient clarity to qualify as a condition precedent.[6]

## IV.

### *This Court has Jurisdiction to Hear this Appeal Because*

### *the Judgment Has Not Been Satisfied*

■ We next address Printz's argument that we lack jurisdiction over this case because Printz has paid C.J. Masonry in full, and, therefore, there is no actual controversy between the parties and the case is moot.

While this matter was pending in the court of appeals, C.J. Masonry undertook to collect the judgment awarded by the trial court through garnishments. Printz tendered this sum and C.J. Masonry accepted it. C.J. Masonry refused to file a satisfaction of judgment and argued that the interest that had accrued on the funds between the time that the writ was issued and the funds were transferred was not paid. Printz tendered the additional money and again moved for a

satisfaction of the judgment. C.J. Masonry refused to accept these funds and opposed the motion, claiming that the judgment was not satisfied. Printz argues that it has paid all of the money it owes and thus the controversy has been resolved. C.J. Masonry maintains that the controversy continues and the case is not moot.

■ Although in general an appellate court will not render judgment on the merits of an appeal if subsequent events have caused the issues in the litigation to become moot, a case is only moot if the parties intended to settle their claims. *See* 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.2 (2d ed. 1982) ("The general rule is now well settled: the case is not moot unless the parties intended to settle."). Accepting a financial award from a party does not necessarily indicate that both parties intended to settle:

> (W)hen a party accepts the benefits of a judgment under circumstances which indicate an intention to finally compromise and settle a disputed claim, an appeal may be foreclosed. In such a case, it is "the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties" which bars a subsequent appeal, and not the fact, standing alone, that benefits under the judgment were accepted.

*United States ex rel. H & S Indus., Inc. v. Rich Co., Inc.*, 525 F.2d 760, 764 (7th Cir. 1975).[7]

---

5. A federal court sitting in North Carolina and applying the law of that state held that the phrase "Final payment shall be made to the Subcontractor ... conditioned upon payment having been received by the Contractor for all of Subcontractor's Work" could not be considered "shorthand" for the term "condition precedent" because there was no extrinsic evidence to show that the parties specifically contemplated and agreed that the subcontractor would bear the risk of nonpayment by the owner. *See Statesville Roofing & Heating Co., Inc. v. Duncan*, 702 F.Supp. 118, 119–121 (W.D.N.C.1988).

6. We note that our decision finds support in the majority of other jurisdictions. Typically a payment clause that creates a condition precedent uses the phrase "as a condition precedent" or other words indicating that the owner's failure to

pay was reasonably foreseen and that the purpose of the payment provision was to address this possibility. *See Koch v. Construction Tech., Inc.*, 924 S.W.2d 68, 71 & n. 1 (Tenn.1996) (reviewing cases).

7. *See also United States ex rel. Morgan & Son Earth Moving v. Timberland Paving & Constr. Co.*, 745 F.2d 595, 598 (9th Cir.1984) ("The usual rule in federal courts is that satisfaction of judgment does not foreclose appeal."); *McGowan v. King*, 616 F.2d 745, 747 (5th Cir. 1980) ("[The appellant] is foreclosed from taking this appeal only if the parties mutually intended a final settlement of all the claims in dispute and a termination of litigation."); *Gadsden v. Fripp*, 330 F.2d 545, 548 (4th Cir.1964) ("A payment of a judgment is not necessarily a

Here the record is clear that when C.J. Masonry accepted payment from Printz, it did not intend to settle its claim on appeal. Hence, we hold that the controversy between C.J. Masonry and Printz is not moot.

## V.

### *Main Electric's Case is not Ripe for Review*

 Lastly, we address whether Main Electric's case is ripe for appellate review at this time.[8] We agree with the court of appeals that the terms of the oral contract between Printz and Main Electric are unclear, and hence this claim must be remanded to the trial court for further factual findings. Because we do not know the specific terms of the payment clause between these parties, we are unable to determine whether the oral contract between Printz and Main Electric included a clause similar to the one between Printz and C.J. Masonry. Therefore, we cannot decide this case. *See Linnebur v. Public Serv. Co. of Colo.*, 716 P.2d 1120, 1123 (Colo.1986). Hence, we affirm the portion of the court of appeals' decision that remands Main Electric's case to the trial court.

## VI.

### *Conclusion*

In conclusion, reviewing the contract between Printz and C.J. Masonry de novo, we hold that the payment provisions did not create a condition precedent to payment and did not absolve Printz of its duty to pay C.J. Masonry. Hence, with respect to C.J. Ma-

sonry, we reverse the judgment of the court of appeals and reinstate the trial court judgment. We also hold that Main Electric's claim is not ripe for review at this time and affirm the judgment of the court of appeals. Therefore, we affirm in part and reverse in part and remand this case to the court of appeals with directions to return the case to the trial court to conduct further proceedings consistent with this opinion.

---

bar to appeal. When a payment of a judgment is made and accepted under such circumstances as to indicate an intention to finally compromise and settle a disputed claim, an appeal may be foreclosed, but, under such circumstances, it is the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties which bars a subsequent appeal, not the bare fact of payment of the judgment."); *Woodson v. Chamberlain*, 317 F.2d 245, 246 (4th Cir.1963) ("Unless there is some contemporaneous agreement not to appeal, implicit in a compromise of the claim after judgment, and so long as, upon reversal, restitution can be enforced, payment of the judgment does not make the controversy moot.").

8. We reject Printz's argument that Main Electric is barred from raising its claim in this court because it did not argue that its contract contained a pay-when-paid clause in its petition for rehearing to the court of appeals. We have never held that a party must include the precise issue it intends to argue on certiorari in its petition for rehearing to the court of appeals. Whether we review the issue is a matter within the sound discretion of this court. Main Electric fully briefed the issue in its petition for certiorari and we hold that its omission from the petition for rehearing does not procedurally preclude our certiorari review.