**Theodore L. MULARZ,**
**Plaintiff-Appellant,**

**v.**

**GREATER PARK CITY COMPANY,**
**Defendant-Appellee.**

**No. 78–1969.**

United States Court of Appeals,
Tenth Circuit.

Argued May 9, 1980.
Decided June 12, 1980.

Arnold Alperstein, Lakewood, Colo. (Donald W. Alperstein, Lakewood, Colo., with him, on brief), for plaintiff-appellant.

F. S. Prince, Jr., of Prince, Yeates & Geldzahler, Salt Lake City, Utah (Donald J. Winder, Salt Lake City, Utah, with him, on brief), for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This appeal is on behalf of Mularz, the plaintiff in the court below, seeking review and reversal of a judgment in favor of the defendant, Greater Park City Co. The cause was tried and appealed previously. On that occasion the plaintiff prevailed on summary judgment. Our decision was that the court had erred in so disposing of it. The case was remanded for trial. Although the facts are succinctly set forth in our prior opinion, *Mularz v. Greater Park City Co.*, No. 77–1040 (10th Cir., June 19, 1978), we here briefly recount them in the light of present issues.

The object of the suit is recovery of the unpaid portion of an architect's fee. Mularz, the architect, had entered into a contract with Park City, a Utah corporation, which contract required rendition of architectural services to Park City in connection with a proposed 160-unit condominium development. Mularz prepared the employment contract. He followed a standard form agreement of the American Institute of Architects. He modified that form by striking out several parts.

Under the contract, Park City agreed to pay Mularz a total of $125,000.00. In return he was to render basic services. The contract contained a definition of the term "basic services." It recognized and defined five stages or phases: schematic design, design development, construction documents, bidding or negotiation, and construction supervision. Park City paid a total of $100,000.00 and hence the action is for the $25,000.00 balance.

The contract set up a schedule for the payment of the fee. Upon the completion of the third construction documents phase, the total payments were to be 80% of the total; at the completion of the bidding and negotiations phase, the total payments were to be completed. Park City abandoned the project before completion of the contract, and this factor is the source of the controversy.

The problem before us arises by reason of the fact that the project was never completed; financing was not obtained by Park City. In October 1973, Park City gave notice to Mularz that the project was on the shelf.

The ultimate question is whether Mularz completely fulfilled his obligations under the contract. In the original action, the trial court in effect ruled that Mularz had fully performed and was entitled to the $25,000.00. An alternative basis for the

court's decision was that Park City had violated the contract by not providing written notice of suspension or abandonment and that even if Mularz had not fulfilled his obligations, his failure to do so was excused by Park City's breach. Park City appealed, and the essence of this court's prior ruling was that Park City had effectively terminated the contract by a letter which was written on March 6, 1975. This in effect notified Mularz that continuation of the project had to await improvement in the economic climate; that if the circumstances changed, the project would be able to go ahead.

In the prior appeal we recognized that there was an unresolved factual question and that was to what extent Mularz had fully performed the fourth, bidding and negotiation, phase. To determine that issue the cause was remanded.

In the pretrial order that was filed following remand, the issues of fact were:

1. Whether the agreement of the parties was that the plaintiff was to receive $125,000 for the work which he had actually performed.

2. Whether there was some bidding and negotiation phase activity which was required in order to get the full fee.

3. If any bidding and negotiation activity was required, how much did he perform?

A contested issue of law was whether parol evidence was admissible.

The trial court's ruling this time around was that the contract was ambiguous considering the broad range of possibilities of what could be required of the architect under the bidding and negotiation phase, and therefore as a consequence of the ambiguousness of the contract, parol evidence was necessary. This consisted of written correspondence between the parties as well as the contract and other documents, together with the testimony of two witnesses: Mularz and, on behalf of Park City, another architect, Ted Warr of Park City, Utah.

Mularz testified that he understood that the $125,000 was a fixed fee and that since Park City had its own architects, no service was required of him during the last two phases. He said that he intended to make himself available for the project at the bidding and negotiation phase so as to handle questions that might arise from bidding contractors by telephone. Mularz gave special, reproducible copies of his plans to Park City's staff whereby they could reproduce as many sets of blueprints for bidding and negotiation purposes without the need for contacting him. At no time was Mularz ever called by Park City's staff to perform any services connected with bidding and negotiation. Mularz also testified, and Warr as well, that a wide variety of services could be required during the period in question and that there was no established practice as to what the specific services would be; that this varied with the particular client, the architect, and the size and complexity of the project.

Warr's testimony was that the final phase would require about 5% of the total architect's services; that it could be less if the bidding and negotiation work was completed mostly by the project owner.

Mularz testified that it was his understanding that the final 20% of his fee, the amount disputed in the action, would be deferred until the making of the financing arrangements.[1] A letter of Mularz, dated March 14, 1973, expressed this.

In the trial court's ruling from the bench, it was said:

In my judgment, considering all of the evidence including the later correspondence, which I don't find to be inconsistent with this determination as to what is the contract, is that the parties agreed that the services which would be contractually required of Mr. Mularz as the architect would be only the first three phases, that there was no contractual obligation for him to do anything with respect

1. This event, of course, never came about. Greater Park City Company terminated the contract.

to negotiation and bids or construction supervision, but that it was also agreed that twenty percent of the basic fee for the first three phases would not be paid until the negotiation and bids phase was completed.

The final holding was that the bidding and negotiation phase, although primarily within the control of the defendant, was a condition precedent to Park City's obligation to pay the remaining 20% under the contract. The court determined that Park City was given an option to proceed or not proceed with the bidding and negotiation phase since it had the power to suspend the contract. The court ruled that Mularz accepted this risk and that Park City's payment obligation never came to pass.

\* \* \* \* \* \*

The crucial issue in the case is whether the trial court erred in its holdings, first, that Mularz was not obligated to perform services during the bidding and negotiation phase of the contract, but, second, that Park City's completion of the bidding and negotiation phase was, as a matter of law, a condition precedent to Park City's having to pay Mularz the remaining 20% of his fee.

\* \* \* \* \* \*

Was the fulfillment of the bidding and negotiation stage of the contract a condition precedent?

■ Where the intention or meaning of a contract is in question as to whether it should be construed as a covenant, or, in the alternative, a condition precedent, the tendency of the courts is to construe it as a covenant or a promise rather than a condition unless it is plain that a condition precedent was intended. See Charles Ilfeld Co. v. Taylor, 156 Colo. 204, 397 P.2d 748, 750–

51 (1964); Restatement of Contracts §§ 260–61 (1932); 5 Williston on Contracts § 665 (3d ed. 1961).[2]

The Colorado Supreme Court reached the same conclusion in Charles Ilfeld Co. v. Taylor, supra, 397 P.2d at 750–51. The court there said:

A stipulation in a contract may be a condition or promise, depending on the intention of the parties. An intent to create a condition in a contract must appear expressly or by clear implication. . . . [citations omitted].

In cases of doubt as to the intention of the parties, courts resolve the doubt in favor of an interpretation making the engagement a promise rather than a condition . . . [citations omitted]. And such rule of construction is founded on a policy of avoiding, if possible, forfeitures. Violations of conditions usually cause forfeitures, whereas breaches of contract can be compensated by damages . . . [citations omitted]. To frown upon forfeitures is part of the judicial policy of this state, too. Reliance Life Ins. Co. v. Wolverton, 88 Colo. 353, 296 P. 793.

Considering that Park City's witness, Mr. Warr, testified that the value of an architect's services in the bidding and negotiation phase amounted to less than 5% of the total value, where, as here, the architect was to act in a consulting capacity only, if the 20% balance of Mularz's fee could be withheld, it would constitute a forfeiture which is not a desirable result, particularly where the contract is ambiguous.

■ The test for distinguishing promises from conditions calls for inquiry as to whose words undertake the performance of

---

**2.** Courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed. The reason of this disinclination is that such a construction prevents the court from dealing out justice to the parties according to the equities of the case. . . .

Because the enforcement of conditions frequently leads to forfeitures and penalties courts have always been indisposed to con-

strue contracts as conditional, unless the language is too clear to be mistaken; and have frequently disregarded plainly expressed conditions, because of their unwillingness to deprive a promisee of all rights on account of some trivial breach of condition.

Southern Surety Co. v. MacMillan Co., 58 F.2d 541, 548 (10th Cir.), cert. denied, 287 U.S. 617, 53 S.Ct. 18, 77 L.Ed. 536 (1932). This court was quoting from Williston on Contracts §§ 671, 827.

the act. Are they the words of the person who is doing the act? If so, the words are interpreted, unless a contrary intent is plain, as a *promise* by that person to perform that act. If the words purport to be those of a party who is not doing the act, they are interpreted as limiting the promise of that party by making the performance of the act a condition. *See* Restatement of Contracts § 260 (1932). *See also Charles Ilfeld Co. v. Taylor, supra* ; 5 Williston on Contracts § 672 (3d ed. 1961). The Restatement of Contracts § 260, comment c. (1932), expresses it in the following manner:

> A clause in a bilateral contract which simply states that a certain thing shall be done, or that a certain event shall happen, or has happened, must be taken prima facie to be the language of the party who is to do the act, or within whose knowledge or power the event is supposed to be, and therefore must be a promise by him. Such a clause cannot be imputed to the other party, unless there is some special reason for so doing.

The district court was no doubt correct in noting that performance of the purported condition precedent, that is, completion of the bidding and negotiation phase, was primarily under the control of Park City. Since Park City had the option to complete the bidding and negotiation phase or not, completion of the bidding and negotiation phase is to be interpreted as a promise by Park City and not as a condition precedent limiting Park City's other promise to pay Mularz for his services.

The district court was of the opinion that Park City's right to suspend the contract and not to complete the bidding and negotiation phase took it out of the foregoing rule. This interpretation is not supported either factually or legally. Park City's superior practical position enabled it to bring the relationship to an end. This brought about termination of bidding and negotiation. It did not affect the Park City's promise to pay Mularz the full contract rate for his services. It is logical to infer that Mularz's agreement to defer the balance of his fee until the time that the construction financing became available was made as an accommodation to Park City. It was made in anticipation of the bidding and negotiation phase being carried out. There is not the slightest indication that Mularz intended to risk a portion of his fee on the non-occurrence of events over which he had no control.

The decision in *North American Graphite Corp. v. Allan*, 184 F.2d 387 (D.C. Cir. 1950), is relevant. In that case, a corporation had contracted with the plaintiff, an engineer, for engineering and supervisory services in the rehabilitation of a graphite mine. In the contract there was a schedule of payments and a statement that "[t]he balance of the over-all retainer or $4,000 to be payable at the rate of $500 per month to commence as soon as the plant is in successful operation. . . ." The court ruled that the corporation's obligation of full payment was not conditional upon the mine's successful operation. Only the time for payment was contingent. It did not render the obligation itself contingent. When the corporation abandoned the project the agreed time was impossible. Therefore, payment became due a reasonable time after the abandonment. *Id.* at 391. To the same effect is *Pan American Realty Trust v. Twenty One Kings, Inc.*, 297 F.Supp. 143 (D.V.I.1968), *aff'd* 408 F.2d 937 (3d Cir. 1969).

Park City relies on the Fourth Circuit decision in *Hood v. Gordy Homes, Inc.*, 267 F.2d 882 (4th Cir. 1959). That case is not in point for the reason that the contract contained an "unambiguous condition" that the debt was payable from a specified fund. *Id.* at 885. The court in *Hood* held that no duty to pay arose unless the promisor had derived funds from the specified source. *Id.* However, it cannot be said in our case that availability of construction financing was an "unambiguous condition" of Park City's obligation to pay Mularz full contract rate for his services.

*Mignot v. Parkhill*, 237 Or. 450, 391 P.2d 755 (1964), involved a subcontractor-plaintiff who sued a contractor for the balance due under a contract that provided: "Con-

tractor shall not be obligated to pay Subcontractor for any of the work until such time as Contractor has himself received the money from Bate Lumber Co." *Id.* at 758. The court refused to construe this provision as a condition. It held instead that the language did no more than affect the time of payment. *Id.*

> where the contract contains a definite and unambiguous promise to pay for labor and materials performed and furnished, or for other services, equally clear and unambiguous language, expressing the intention that the happening of a contingency over which the promisee has no control shall be a condition precedent to payment, must be found in the contract before the positive and absolute agreement to pay will be considered as superseded.

*Id.* at 759.

In view of the foregoing, and considering that the completion of bidding and negotiation was a *promise* by Park City and not a condition of its obligation to pay, when was payment of the balance of Mularz's fee due, considering also that there was no bidding and negotiation phase? The answer is that where, as here, a debt constitutes an absolute rather than a contingent liability, and payment was agreed to be made on the occurrence of an event which does not occur, payment must be made within a reasonable time. *Home Savings Ass'n v. Tappan Co.*, 403 F.2d 201, 203 (5th Cir. 1968); *Hood v. Gordy Homes, Inc.*, 267 F.2d 882, 885–86 (4th Cir. 1959). *See Shull v. Sexton*, 154 Colo. 311, 390 P.2d 313, 317 (1964). *See generally* Annot., 148 A.L.R. 1075 (1944). Accordingly, the payment of the remainder of Mularz's fee was due within a reasonable time after the project was suspended in March 1975, and it is now long overdue.

Finally, Park City makes the argument that since Mularz performed no services at the bidding and negotiation stage, he should not be paid for that reason. This offering is wholly lacking in merit. The district court found that Mularz had no contractual obligation to do anything during the bidding and negotiation phase. There is no indication in the record, and Park City does not argue, that Mularz breached the contract by refusing to perform services during bidding and negotiation. Park City's only ground is a quantum meruit theory. Park City contends, in effect, that Mularz has been paid sufficiently, tested by reasonable values, for the services already rendered. Park City forgets that the evidence of Mularz's hourly rate was correctly excluded by the judge, who ruled that the case was one in express contract, not a quantum meruit case, and so Park City's argument has to be rejected. Also, Mularz did not default on any part of this contract. He was at all times ready to perform. Park City brought on the termination and there exists no valid basis for excusing the final payment.

We have considered the other contentions and most of them are secondary to that which we have already decided, for example, whether Park City should have filed a cross-appeal in order to have been able to advance the question of admissibility of parol evidence. Our conclusion is that there was ambiguity in the contract which fully justified receipt of the evidence. We need not pursue the parol evidence issue in depth. It is sufficient to state our conclusion that where there is ambiguity or lack of clarity, the court may look beyond the written instrument and resort to extrinsic evidence to ascertain the true meaning of the contract. *Socony Mobil Oil Co. v. Humble Oil & Refining Co.*, 387 F.2d 155, 157 (10th Cir. 1967). The clause regarding payment was indeed facially ambiguous, and the trial court was correct in its ruling as to the admissibility of parol evidence.

Next, the question of alleged error in not strictly adhering to the pleadings and the pretrial order was a question which was advanced. Since we have reversed the district court's conclusion that there was a condition precedent created, it is unnecessary to consider this issue. That matter was well within the discretion of the district court.

Having concluded that the district court erred in concluding that the agreement created a condition precedent, it is apparent that this cuts across all of the procedural lines which have been urged.

The judgment of the district court must therefore be reversed. The cause is remanded, and the district court is instructed to enter judgment for the appellant.