SUMMIT PETROLEUM CORPORATION OF INDIANA; and B & J Oil Co., Inc., Plaintiffs–Appellees,

v.

INGERSOLL–RAND FINANCIAL CORP.; and Myron Jones, Defendants–Appellants.

No. 89–5862.

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1990.

Decided July 6, 1990.

H. Eugene Harmon, Philip I. Huddleston (argued), Huddleston Brothers, Bowling Green, Ky., for plaintiffs-appellees.

Franklin D. Drake (argued), Mapother & Mapother, Louisville, Ky., for defendants-appellants.

Before GUY and RYAN, Circuit Judges, and ENGEL, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

In this diversity action concerning the sale of collateral securing a commercial debt, defendants Ingersoll–Rand Financial Corporation (IRFC) and Myron Jones appeal from a judgment entered by the district court following a one-day bench trial. The district court, applying Kentucky law, determined that the defendants unlawfully sold a drilling rig by failing to provide notice or a right of redemption to plaintiff Summit Petroleum Corporation of Indiana (Summit), and awarded damages of $303,-244 in favor of Summit and its successor in interest, B & J Oil Co., Inc. (B & J). We affirm the judgment in its entirety against defendant IRFC, but reverse with respect to defendant Jones.

## I.

Collins Petroleum Corporation (Collins Petroleum) purchased the Ingersoll–Rand drilling rig underlying this dispute in 1982. IRFC provided the financing for the rig, and C.G. Collins personally guaranteed the debt resulting from the purchase. In 1984, Collins Petroleum placed a junior lien on the rig in favor of Citizens Union Bank of Lexington, Kentucky. Collins Petroleum subsequently encountered financial difficulties and, by 1985, fell behind in its payments to IRFC. Consequently, in February of 1986, IRFC declared Collins Petroleum in default and accelerated the balance due on the rig. IRFC then filed suit against both Collins Petroleum and guarantor C.G. Collins in United States district court seeking repossession and the balance due on the rig.[1]

IRFC and Collins Petroleum ultimately resolved the lawsuit by negotiating an agreement that was entered as an order and reduced to a judgment. Under the terms of the agreement, IRFC received a $105,008.40 judgment plus interest and attorney fees against Collins Petroleum and C.G. Collins. In exchange, Collins Petroleum obtained an entitlement to immediate possession of the rig. Collins Petroleum's continued possession of the rig was conditioned upon adherence to a payment schedule of $21,990 up front, followed by three monthly installments of $5,000, followed by a final balloon payment of $76,359.05. Satisfaction of the requisite payments entitled Collins Petroleum to full release of IRFC's lien on the rig, whereas failure to meet the payment deadlines gave IRFC the right to immediate execution on the unpaid balance.

On May 1, 1986, Summit signed a separate agreement to purchase the drilling rig from Collins Petroleum. The purchase agreement required Summit to fulfill Collins Petroleum's payment obligations to IRFC. According to the terms of the purchase agreement, Summit was to make all payments directly to IRFC, rather than to Collins Petroleum. The document signed by Summit and Collins Petroleum further provided that "[a]ll terms and conditions of this Purchase Agreement will be enforced upon unconditional release of the Second Mortgage of Citizens Union Bank of Lexington, Kentucky." According to C.G. Collins, Collins Petroleum could not afford to pay off the rig, so the company agreed to sell its interest in the rig to Summit as a favor to Summit President Louis Judd.

Summit made the initial lump-sum payment to IRFC through a Summit attorney who coincidentally served as counsel for Collins Petroleum. IRFC, unaware of the actual source of the money, accepted and deposited the payment. Summit subsequently tendered the first of the three $5,000 installment payments directly to IRFC, but IRFC refused to deposit the payment. Instead, IRFC demanded a copy

---

1. Summit, which had entered into a three-month lease of the rig from Collins Petroleum ending on March 1, 1986, also was named as a defendant simply because it had possession of the rig when IRFC filed suit. Summit was dismissed as a defendant soon after IRFC temporarily reclaimed the rig on April 22, 1986.

of the purchase agreement between Collins Petroleum and Summit, which Judd, the president of Summit, promptly sent to defendant Jones, IRFC's representative. Jones informed Judd that IRFC did not consent to the purchase, but would agree to a transfer and assumption of the Collins Petroleum debt by Summit provided Summit's credit was acceptable. When Summit failed to supply a sufficient number of personal guarantees to IRFC,[2] IRFC refused to acknowledge payments from Summit as satisfaction of Collins Petroleum's obligation. As a result, neither Collins Petroleum nor Summit made any further payments to IRFC, thereby leaving a substantial portion of the agreed judgment debt unpaid.

On August 5, 1986, defendant Jones repossessed the rig on behalf of IRFC at Judd's place of business. According to the district court's findings, however, Jones promised Judd that Summit could obtain the rig by paying off the balance due under the agreed judgment. Before releasing the rig to Jones, Judd cleaned and fueled it. For several weeks following repossession, Judd and one of his associates, Ernest Breeding, repeatedly called Jones to negotiate the return of the rig to Summit. On August 15, 1986, Breeding informed Jones that Summit had the $83,000 necessary to pay off the balance on the rig; Jones expressed no reservations or concerns. When Judd called Jones on August 20, 1986, however, Jones demanded an additional $10,000 on behalf of IRFC. While Judd attempted to line up $10,000 in additional financing, IRFC sold the drilling rig for $90,000 without providing any notice of the impending sale to Judd or to anyone else at Summit.

On September 2, 1986, Summit and its successor in interest, B & J, filed suit against IRFC and Jones in the Adair County, Kentucky, Circuit Court. The defendants promptly removed the action, and the plaintiffs thereafter amended their complaint. The amended complaint, which set forth claims for fraudulent inducement and tortious interference with business opportunities, demanded compensatory and punitive damages. Before the case proceeded to trial, the defendants unsuccessfully moved for summary judgment.

The district court conducted a one-day bench trial on January 17, 1989. After receiving post-trial briefs, the court issued findings of fact and conclusions of law as contemplated by Federal Rule of Civil Procedure 52(a). Specifically, the district court ruled that Collins Petroleum, as a debtor under Kentucky law, could freely transfer its interest in the drilling rig to Summit, and that such a transfer took place pursuant to the May 1, 1986, purchase agreement between Collins Petroleum and Summit. Once Summit obtained Collins Petroleum's interest in the rig, thereby becoming a debtor vis-a-vis IRFC, Summit was entitled to reasonable notice of any sale of the drilling rig as well as a right to redeem the rig prior to sale. IRFC's failure to provide Summit with either notice of the sale or its right of redemption, according to the district court, entitled Summit to compensatory damages of $303,244.[3] Therefore, the district court entered judgment in favor of the plaintiffs for that amount. This appeal followed.

The defendants identify four assignments of error for consideration on appeal.[4] First, they assert that the purchase agreement between Summit and Collins Petroleum contained a condition precedent that was not fulfilled, thereby preventing the contractual transfer of Collins Petroleum's interest in the drilling rig to Summit. Sec-

---

**2.** IRFC demanded five personal guarantees, but Summit only submitted three.

**3.** The district court ruled that Summit's lost investment amounted to $30,150, that the lost value of the rig totalled $182,000, and that Summit's lost business opportunity equalled $91,094.

**4.** The defendants also challenge the district court's denial of their summary judgment mo-

tion. However, as we recently ruled in *Jarrett v. Epperly*, 896 F.2d 1013 (6th Cir.1990), "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Id.* at 1016 (footnote omitted). Accordingly, we need not consider the defendants' contention that their motion for summary judgment was incorrectly denied.

ond, the defendants claim the status of creditor beneficiaries to the purchase agreement with the authority to block the transfer by enforcing the condition precedent. Third, they challenge the damage figures established by the district court. Finally, defendant Jones argues that he should have been dismissed as a party defendant. We shall address the first two arguments in tandem and the additional arguments in turn. Our review is circumscribed by Rule 52(a), which dictates that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous[.]" Fed.R. Civ.P. 52(a); see also Anderson v. Bessemer City, North Carolina, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

## II.

█ Under Kentucky law, a debtor may transfer "rights in collateral ... notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default." Ky. Rev.Stat.Ann. § 355.9–311 (Baldwin 1983). Therefore, Collins Petroleum clearly had the power to transfer its interest in the drilling rig to Summit over IRFC's objection. Moreover, a "debtor" is defined by Kentucky law as "the owner of the collateral...." [5] Id. § 355.9–105(1)(d). Thus, if Collins Petroleum transferred its interest in the drilling rig to Summit, Summit became a debtor entitled to "reasonable notification" of the proposed sale of the drilling rig, see id. § 355.9–504(3), and to "redeem the collateral by tendering fulfillment of all obligations secured by the collateral" as well as the creditor's related expenses. See id. § 355.9–506. These established principles, which formed the basis of the district court's ruling in favor of the plaintiffs, are not contested by the defendants on appeal. Instead, the defendants inter-

pose a single justification for depriving Summit of notice and an opportunity to redeem the rig: they assert that Summit never attained the status of a debtor because Collins Petroleum never transferred an interest in the rig to Summit. This argument is predicated entirely upon the clause in the May 1, 1986, purchase agreement between Collins Petroleum and Summit that "[a]ll terms and conditions of this Purchase Agreement will be enforced *upon unconditional release of the Second Mortgage of Citizens Union Bank of Lexington, Kentucky.*" (Emphasis added). The defendants claim that this clause constitutes a condition precedent which IRFC, as a creditor beneficiary to the May 1, 1986, purchase agreement between Summit and Collins Petroleum, could enforce to block the transfer of Collins Petroleum's interest in the drilling rig to Summit. We disagree.

█ A condition precedent generally is defined as "an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises." J. Calamari & J. Perillo, The Law of Contracts § 11–3, at 384 (2d ed. 1977). Here, the defendants argue that the transfer to Summit of Collins Petroleum's interest in the rig was conditioned upon release of the second mortgage, which did not occur during the relevant time period in 1986. This analysis, which the district court correctly rejected, assumes an unwarranted expansion of the condition precedent concept. In *A.L. Pickens Co. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118 (6th Cir.1981), a case applying Kentucky law, we explained that:

[C]onditions precedent are not favored and the courts will not construe stipulations to be precedent unless required to do so by plain, unambiguous language or by necessary implication. This is particularly so when interpreting a stipulation

**5.** The complete definition of a "debtor" as provided by Ky.Rev.Stat.Ann. § 355.9–105(1)(d) is as follows:

"Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper.

Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires[.]

as a condition precedent ... would work a forfeiture or result in inequitable consequences.

*Id.* at 121. In this case, as the district court observed, treating the release of the second mortgage as a condition precedent would produce both inequitable and illogical consequences. That is, Collins Petroleum would be able to shift its entire payment obligation to Summit, and then prevent the transfer of its interest in the drilling rig by simply refusing to take the steps necessary to obtain release of the second mortgage. Summit and Collins Petroleum clearly intended the second mortgage release clause to benefit, not burden, Summit; Summit's satisfaction of the entire Collins Petroleum debt in accordance with the terms of the purchase agreement was intended to provide Summit with full and unencumbered title to the drilling rig. It would defy logic to interpret such a clause inserted for Summit's benefit to divest Summit of any interest in the drilling rig despite Summit's willingness to satisfy its payment obligations.[6] The district court's ruling to this effect, which "is entitled to considerable deference" on such a matter of state law, *see Diggs v. Pepsi–Cola Metro. Bottling Co.,* 861 F.2d 914, 927 (6th

Cir.1988), is both entirely rational and legally unassailable.

The defendants further assert that reference to the conduct of Summit and Collins Petroleum, the parties to the May 1, 1986, purchase agreement, illustrates that they treated the second mortgage release clause as a condition precedent. Although we agree that the doctrine of contemporaneous construction directs us to consider the parties' conduct in ascertaining the nature of the mortgage release clause, *see, e.g., Billips v. Hughes,* 259 S.W.2d 6, 7 (Ky.1953); *accord A.L. Pickens,* 650 F.2d at 120, we find that the conduct of both Summit and Collins Petroleum demonstrates that the mortgage release clause cannot be viewed as a condition precedent. While the purchase agreement was in effect, Summit maintained possession of the drilling rig, expended $7,500 overhauling the rig, and made (or attempted to make) payments to IRFC. Thus, Summit exercised full control over the rig while Collins Petroleum ostensibly disclaimed any ownership interest in the rig. As the district court observed, the testimony adduced at trial bolstered this understanding of Summit's interest in the rig. Accordingly, we agree with the district court that, even assuming IRFC's status as a creditor beneficiary to the May 1, 1986, purchase agreement,[7] the failure of

---

**6.** This point is illustrated by the Tenth Circuit's decision in *Mularz v. Greater Park City Co.,* 623 F.2d 139 (10th Cir.1980). *Mularz* involved a claim for the final payment on an architect's fee. Although the architect completed the bulk of the architectural services anticipated by his contract, the final payment to him was not due until the completion of bidding and negotiation. When the company abandoned the project without completing the bidding and negotiation, the company refused to pay the architect on the theory that completion of the bidding and negotiation phase was a condition precedent to the obligation to finish paying the architect. The Tenth Circuit flatly rejected this argument, and offered the following explanation for its ruling:

The test for distinguishing promises from conditions calls for inquiry as to whose words undertake the performance of the act. Are they the words of the person who is doing the act? If so, the words are interpreted, unless a contrary intent is plain, as a *promise* by that person to perform that act. If the words purport to be those of a party who is not doing the act, they are interpreted as limiting

the promise of that party by making the performance of the act a condition.

\* \* \* \* \* \*

The district court was no doubt correct in noting that performance of the purported condition precedent, that is, completion of the bidding and negotiation phase, was primarily under the control of Park City. Since Park City had the option to complete the bidding and negotiation phase or not, completion of the bidding and negotiation phase is to be interpreted as a promise by Park City and not as a condition precedent limiting Park City's other promise to pay Mularz for his services. *Id.* at 142–43 (emphasis in original). The logic of *Mularz* applies with equal force in this case. Collins Petroleum's promise to obtain release of the second mortgage cannot be viewed as a condition precedent blocking Summit's ownership when Collins Petroleum itself undertook the unsatisfied responsibility to clear the second mortgage.

**7.** Under Kentucky law, "[a] person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to

Collins Petroleum to extinguish the second mortgage did not deprive Summit of Collins Petroleum's interest in the rig. Thus, IRFC wrongfully denied Summit its right of redemption and notice of the sale.

### III.

■ The defendants raise two challenges to the damage award. First, they contend that the district court erred in setting the market value of the rig at $275,000 for purposes of assessing damages. The district court carefully considered the parties' competing valuations and arrived at $275,-000, a figure well below the purchase price of the rig and within the range of the competing valuations. Giving appropriate regard "to the opportunity of the trial court" to assess "the credibility of the witnesses[,]" see Fed.R.Civ.P. 52(a), we cannot say that the district court's established value of $275,000 is clearly erroneous.

■ The defendants' second objection to the total damage award focuses upon the $91,094 figure pertaining to lost business opportunities. The defendants assert that these losses could have been mitigated if Summit had been more aggressive in attempting to rent a rig to replace the one that IRFC repossessed and sold. The district court apparently disagreed, and thus refused to reduce the amount of the award for failure to mitigate. We have determined that the Uniform Commercial Code places "the burden upon the defendant to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages." *TCP Indus., Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 550 (6th Cir. 1981). Here, the defendants offered little more than conclusory statements to support their argument that Summit failed to mitigate damages. In contrast, Summit furnished evidence of its efforts to minimize its losses. Moreover, the adequacy of mitigation is a question of fact, see, e.g., *State Office Systems, Inc. v. Olivetti Corp. of America,* 762 F.2d 843, 847 (10th Cir.1985), and the district court's resolution

of such an issue is subject only to clearly erroneous review. *Cf. Ford v. Nicks,* 866 F.2d 865, 873 (6th Cir.1989) ("The district court's finding on the issue of mitigation of damages [in a Title VII case] is a factual finding reviewable only under the 'clearly erroneous' standard."). In this case, the district court's award of damages for lost business opportunities, which was not reduced for failure to mitigate, cannot be characterized as clearly erroneous. Thus, the judgment against defendant IRFC is AFFIRMED in its entirety.

### IV.

■ Defendant Jones contends that he should not be held personally liable for the damages flowing from actions he undertook strictly in his capacity as an agent of IRFC. We agree. Kentucky law insulates agents from liability for "acts done within the scope of [their] agency on behalf of a disclosed principal." *American Collectors Exchange, Inc. v. Kentucky State Democratic Central Comm.,* 566 S.W.2d 759, 761 (Ky.App.1978); see also Potter v. Chaney, 290 S.W.2d 44, 46 (Ky.App.1956). In this case, Summit's officers unquestionably understood from the inception of their contact with defendant Jones that Jones represented IRFC. Therefore, defendant Jones "is not liable on the judgment [because] he dealt throughout [the underlying events] on behalf of a disclosed principal." *North Ridge Farms, Inc. v. Stathatos,* 760 S.W.2d 89, 91 (Ky.App.1988). Accordingly, the judgment against defendant Jones is REVERSED.

---

the beneficiary." *Sexton v. Taylor County,* 692 S.W.2d 808, 810 (Ky.App.1985) (quoting *King v.*

*National Indus., Inc.,* 512 F.2d 29, 33 (6th Cir. 1975)).