103 F.3d 128
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Theresa T.Y. CHENG, Plaintiff-Appellee,
v.
MINACT, INC., Defendant-Appellant.
 No. 95-3946.
 United States Court of Appeals, Sixth Circuit.
 Dec. 16, 1996.
 
 Before: GUY, RYAN, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, MINACT, Inc., appeals from the judgment for plaintiff, Theresa T.Y. Cheng, following a jury trial on plaintiff's claim under the Age Discrimination in Employment Act of 1967, as amended (ADEA), 29 U.S.C. § 621 et seq. On appeal defendant claims that the district court erred in denying the following motions by MINACT: (1) motion for summary judgment on plaintiff's age discrimination claim; (2) motion in limine to exclude certain comments; (3) motion for judgment as a matter of law pursuant to FED.R.CIV.P. 50(a); (4) renewed motion for judgment as a matter of law pursuant to FED.R.CIV.P. 50(b); and (5) motion for new trial pursuant to FED.R.CIV.P. 59(a). After a full review of the record we are convinced no error requiring reversal occurred and we affirm.
 
 I.
 
 2
 Plaintiff, Theresa Cheng, was hired by MINACT as a learning lab instructor on February 1, 1991. MINACT operated the Cleveland Job Corps, an educational effort funded by the United States Department of Labor designed to provide vocational and general educational instruction to disadvantaged youths aged 16 to 22. MINACT had taken over operations of the center from Alpha Kappa Alpha Sorority, Inc. Before Cheng began working for MINACT, she had been employed as a math teacher by Alpha Kappa Alpha at the center since May 1972.
 
 
 3
 Although Cheng had received favorable performance reviews and had never received a written reprimand during her tenure with Alpha Kappa Alpha, deficiencies in her classroom management were known by the center's administration and staff. Following classroom observation, Cheng's interviewer for the MINACT position praised her teaching abilities and recommended her for hire, but cautioned on the interview report form that "Ms. Cheng has an appreciable problem with class room management. She handles good students wonderfully, but uninspired students cause her problems, especially when they act out. Behavioral management training is absolutely necessary." (App. at 107.)
 
 
 4
 Cheng, like all other new employees of MINACT, was hired on a probationary basis. During probation she was to be evaluated every two months. In her first evaluation she received average to above average marks. Her immediate supervisor, Sondra McCurry, manager of academics, recommended that her employment be continued. Despite listing several strengths on the evaluation, McCurry listed management of student behavior and overall classroom management as areas of needed improvement.
 
 
 5
 In May 1991 Kathleen Pervis, the director of training and Cheng's second-line supervisor, issued a written reprimand to Cheng as a result of noise and disruptive behavior by students on her floor between classes. Other staff received a reprimand based on the same incident.
 
 
 6
 At the end of that month Cheng received her second two-month evaluation. Again McCurry gave her average to above average marks and recommended continued employment. In her written remarks, although she praised Cheng for her creative teaching methodologies and student interaction, she noted once again that "overall classroom management and management of student behavior" still needed improvement. (App. at 122.) She also noted that Cheng was "not open to recommendations regarding classroom management." Id. Pervis had a harsher view of Cheng's shortcomings in classroom management and, based on this, attached an addendum to the review evaluating Cheng as marginal--the lowest possible score--in the areas of "ability to handle job" and "response to training."
 
 
 7
 Shortly thereafter McCurry was terminated and Pervis became Cheng's immediate supervisor. In an unprecedented step, Pervis placed Cheng on a 30-day classroom management plan, noting specific items of concern in the area of classroom management that needed to be corrected. These included such items as "classroom noise level," "students sleeping or not doing their work," and "teacher not confronting negative behavior."
 
 
 8
 During this 30-day period, Pervis continued to issue written reprimands and memoranda of concern to Cheng. On June 11, 1991, Cheng was reprimanded for leaving students unattended while seeking assistance in handling a disruptive student. On June 16, 1991, she was issued a "classroom concern" memorandum for accusing students of tampering with the classroom overhead projector instead of referring the matter to the center's student disciplinarian, who is responsible for investigating and charging students. Two days later, Cheng and other instructors received written reprimands for unruly student behavior at an assembly. On July 2, 1991, Cheng received a memorandum of concern resulting from her filing late attendance records for the previous day. On July 20, 1991, Pervis reprimanded Cheng for allowing students to sit in class without work. Cheng also received weekly evaluations relating to her 30-day management plan. Pervis rated her unsatisfactory for each week based on her lack of classroom control. On July 23, 1991, Pervis recommended Cheng be dismissed based on her inadequate classroom management.
 
 
 9
 Cheng pursued a grievance with MINACT regarding her termination and filed discrimination charges with the EEOC. Unable to resolve the dispute informally, she filed suit in federal court alleging age discrimination, national origin discrimination (both hostile work environment and discriminatory discharge), and retaliation.
 
 
 10
 Defendant moved for summary judgment, which the court granted in part and denied in part. Specifically, the court found that plaintiff's hostile work environment and retaliation claims were without merit. The court denied summary judgment, however, as to plaintiff's claims of discriminatory discharge based on age and ethnic origin.
 
 
 11
 Prior to trial defendant filed a motion in limine to exclude what it characterized as isolated age-related comments by Cheng's immediate supervisor. The motion was denied, and the matter proceeded to trial. The ethnic origin claim was tried to the bench and the age claim was tried to the jury. At the close of plaintiff's evidence, the defendant moved for judgment as a matter of law pursuant to FED.R.CIV.P. 50(a) on both claims. The court granted the motion as to plaintiff's ethnic origin claim, but denied it as to plaintiff's age claim.
 
 
 12
 The trial continued and the jury returned a verdict in favor of plaintiff in the amount of $88,099. Defendant moved for judgment as a matter of law pursuant to FED.R.CIV.P. 50(b), and moved for a new trial under FED.R.CIV.P. 59(a). The court denied these motions and defendant now appeals.
 
 II.
 
 13
 Defendant challenges the district court's disposition of various motions, and seeks at a minimum reversal and remand for a new trial. We address these motions in turn.
 
 
 14
 A. Denial of Defendant's Motion for Summary Judgment
 
 
 15
 Defendant devotes the majority of its argument challenging the district court's disposition of its summary judgment motion. We note as an initial matter that defendant fails to cite in its notice of appeal the order denying in part defendant's summary judgment motion. Even if defendant had properly cited the order, however, this court in Jarrett v. Epperly, 896 F.2d 1013, 1016 (6th Cir.1990), held that when "summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." See also Summit Petroleum Corp. v. Ingersoll-Rand Fin. Corp., 909 F.2d 862, 865 n. 4 (6th Cir.1990) (applying Jarrett ). Therefore, defendant is precluded from challenging the order as a matter of law.
 
 B. Denial of Defendant's Motion in Limine
 
 16
 Defendant next challenges the denial of its motion in limine. Defendant argues that admission of certain evidence was so prejudicial as to warrant reversal of the trial court's order denying a new trial. Prior to trial defendant filed a motion in limine seeking, in pertinent part, to exclude evidence of "isolated and ambiguous comments made by persons who had no direct role in determining whether plaintiff was discharged." (App. at 247.) Specifically, defendant sought to exclude evidence that during a conversation regarding ethnic harassment against Cheng by her students, Cheng's "former supervisor, Sondra McCurry, asked her how old she was and asked if she had ever considered early retirement." (Id. at 247-48.) Defendant argued that such comments are irrelevant and too prejudicial to submit to the jury. The district court rejected defendant's argument and allowed the remarks, ruling "[i]t goes to the weight that the jury may want to give it, and it goes to whatever interpretation the jury may want to give this statement." (Id. at 568.)
 
 
 17
 Except where an error of law is involved, we review a district court's admission of evidence under an abuse of discretion standard. Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 156-57 (6th Cir.1988). Plaintiff argues that defendant has failed to preserve any objection to the court's determination by not renewing its objection at trial. See, e.g., Polk v. Yellow Freight Sys., Inc., 876 F.2d 527, 532 (6th Cir.1989). Defendant disputes plaintiff's contention. The relevant transcript excerpt from the trial provides as follows:
 
 
 18
 Q. Did you ever bring to the attention of Sondra McCurry the type of verbal abuse that we have talked about here today, the racial abuse addressed towards you?
 
 
 19
 A. Yes, I talked to her before she left. And she--
 
 
 20
 Q. Ms. Cheng, what did Ms. McCurry say to you in response to your complaints regarding the verbal abuse?
 
 
 21
 A. She said--
 
 
 22
 THE COURT: I am going to allow the answer under ruling 611(c).
 
 
 23
 (App. at 547-48.) Defendant claims that its counsel had risen to object and therefore the court interjected as it did. Plaintiff does not dispute this contention. Although the court referenced the wrong section of the Federal Rules of Evidence,[1] under the circumstances, we conclude defendant did preserve its objection on the motion in limine issue. Even assuming defendant has preserved this issue for appeal, no abuse of discretion has been shown. Defendant relies on this court's decision in Gagne v. Northwestern National Insurance Co., 881 F.2d 309 (6th Cir.1989). In Gagne, we affirmed summary judgment for the employer in a discriminatory discharge action based on age. The only evidence offered to create a genuine issue of material fact was the employee's supervisor's solitary remark that he "needed younger blood." Id. at 314. In addition, Gagne testified that the remark was uttered at a meeting attended by a number of employees, and indicated that the statement was not directed at any particular individual. We find Gagne to be distinguishable. Gagne did not involve an evidentiary ruling. The court found plaintiff's proofs inadequate, not inadmissible. Unlike the setting in Gagne, McCurry made her remarks to Cheng in a private conversation between the two of them. Moreover, the record established that the comments coupled with other relevant evidence were not sufficiently isolated to be irrelevant or more prejudicial than probative. For example, Cheng showed that Gary Samarin, a white male in his mid-40s had been repeatedly criticized for his classroom management. Despite these criticisms, Pervis made no attempt to terminate him.
 
 
 24
 C. Defendant's Motions for Judgment as a Matter of Law and in the Alternative for a New Trial
 
 
 25
 Defendant argues that the district court erred in denying its motions for judgment as a matter of law at the conclusion of plaintiff's case and at the conclusion of all of the evidence. See FED.R.CIV.P. 50(a). Additionally, defendant argues that the court erred in denying its renewed motion for judgment as a matter of law following judgment on the verdict in favor of plaintiff. See id. at Rule 50(b). Defendant also moved in the alternative for a new trial. See FED.R.CIV.P. 59(a).
 
 
 26
 We review the denial of a motion for judgment as a matter of law under the same standard used by the district court. See, e.g., Tuck v. HCA Health Servs., Inc., 7 F.3d 465, 469 (6th Cir.1993). A district court considers the evidence "in a light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences." Id. We review denial of a motion for a new trial under an abuse of discretion standard. This court finds an abuse of discretion when it has " 'a definite and firm conviction that the trial court committed a clear error of judgment.' " Engebretser v. Fairchild Aircraft Corp., 21 F.3d 721, 728 (6th Cir.1994) (quoting Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989)). In considering appeals in employment discrimination cases, "it is now firmly established in this circuit that when a case has been tried on the merits, a reviewing appellate court need not address the sufficiency of plaintiff's prima facie case, and may instead proceed directly to the ultimate question whether plaintiff has established discrimination." Brownlow v. Edgecomb Metals Co., 867 F.2d 960, 963 (6th Cir.1989). Once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to assert a legitimate, nondiscriminatory justification for its action. E.g., Gagne, 881 F.2d at 313. Once the employer articulates a legitimate reason, the burden shifts back to the employee to establish that the employer's proffered explanation is a mere pretext for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).
 
 
 27
 Pretext may be shown by a preponderance of the evidence either that the employee's proffered reason for the adverse action either (1) had no basis in fact, (2) did not actually motivate the employer to take the action, or (3) was insufficient to motivate the action. See, e.g., Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6th Cir.1994). The factfinder's disbelief of the employer's reasons may, together with the elements of the prima facie case, suffice to show intentional discrimination. 509 U.S. at 511.
 
 
 28
 In this regard the record reflects that while younger teachers with similar classroom management problems were not terminated, Cheng was singled out for discharge. For example, as referenced earlier, Gary Samarin was found deficient in classroom management in the same evaluation periods as Cheng.[2] Cheng's discharge, moreover, was preceded by an unprecedented scrutiny of her daily routine accompanied by a flurry of paper documentation by Pervis noting any and all perceived infractions, including such matters as not turning in her daily attendance sheet on time.
 
 
 29
 Furthermore, the jury heard evidence of age-related comments. In addition to the early retirement remarks by Cheng's immediate supervisor, the jury also heard testimony that the center's deputy director during the probationary period repeatedly remarked in staff meetings that "you can't teach old dogs new tricks." (App. at 507.) The deputy director, who was Pervis's supervisor, was in the chain-of-command authorizing Cheng's discharge.
 
 
 30
 In addition, there was ample evidence that Cheng possessed outstanding academic teaching skills. She produced results. For example, the jury heard testimony from the center's registrar and others how Cheng had a high rate of "phase outs"--students that completed the center's various programs, including the G.E.D. examination.
 
 
 31
 Although admittedly this is a close case, we conclude that the jury, upon weighing the evidence, could properly have concluded that Cheng's classroom management difficulties did not actually motivate or were insufficient to motivate her discharge and properly inferred illegal discrimination based on age. We further conclude that the jury's verdict was supported by sufficient evidence and not against the clear weight of the evidence. Therefore the motions for judgment as a matter of law were properly denied and the district court did not abuse its discretion in refusing to grant a new trial.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 Federal Rule of Evidence 611(c) pertains to leading questions
 
 
 [2]
 The defendant sought to exclude Samarin from any comparison since Samarin was in his mid-40s at the time and therefore not outside the protected age category. The Supreme Court recently decided, however, that under the ADEA comparisons may be made in age discrimination cases even among employees within the protected age category. See O'Connor v. Consolidated Coin Caterers Corp., 116 S.Ct. 1307 (1996) (56-year-old worker may challenge under ADEA discharge and replacement by a 40-year-old worker). In addressing inferences that an employment decision was based on an illegal discriminatory criterion, the Court found age disparity to be a more reliable indicator than comparison with one outside the protected class. Id. at 1310. In this case we find the age disparity between Samarin (mid-40s) and Cheng (60) to be legally significant