97 F.3d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNIROYAL GOODRICH TIRE COMPANY, Plaintiff-Appellee,
v.
William L. HUDSON, Defendant-Appellant.
 No. 95-1130.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1996.
 
 Before: MARTIN, JONES, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Uniroyal Goodrich Tire Company sued William L. Hudson, a former employee at the company's research and development facilities, to enforce two nondisclosure contracts, and to prevent Hudson from revealing trade secrets and other confidential information, including within the context of litigation. After trial, the company succeeded in obtaining a permanent injunction against Hudson. Hudson now appeals the district court's decision to grant a permanent injunction, its earlier decision holding him in contempt for allegedly violating the district court's preliminary injunction, and its refusal to grant his pretrial motion for summary judgment in the instant action. For the following reasons, we AFFIRM.
 
 
 2
 William L. Hudson was employed by the Uniroyal Tire Company from October 1966 through August 1986. After Uniroyal merged with B.F. Goodrich Tire Company, Hudson was employed by the new entity, Uniroyal Goodrich Tire Company, through December 1991. On September 29, 1987, and May 1, 1991, Hudson signed contracts containing nondisclosure agreements. The first agreement stated in relevant part:
 
 
 3
 I will not use, publish or otherwise disclose, except as my Company duties may require, either during or subsequent to my employment, any unpublished information or data confidential to the Company or confidential to others without the Company's prior written consent....
 
 
 4
 This provision of the 1987 agreement contained no term of duration after which Hudson could disclose confidential company information. The 1991 agreement contained a confidentiality provision which stated that Hudson agreed:
 
 
 5
 1. To maintain Information in confidence at all times during and after your employment whether acquired before this date or after, or in the course of or arising from your employment with UGTC. You specifically agree that you will not use any Information, independent of your work for UGTC and will not divulge Information to others, either during or after employment by UGTC, except as specifically authorized and required by your duties to UGTC.
 
 
 6
 This provision also does not limit the duration of Hudson's agreement not to disclose confidential information. However, the 1991 agreement also provided:
 
 
 7
 6. That you will not, for a period of two (2) years from the date of termination of your employment with UGTC, become associated with or employed by any individual, firm, or corporation, in any capacity involving research in, production of, or use of technology related to the production, design or testing of tires or related products, or any component or element thereof, or in any process or facilities for the production of any product component or element thereof, (i) which is competitive, or is foreseeably competitive, with any product or component thereof which is the subject of previous, current, planned or anticipated UGTC research, design, development, manufacture, or sale activity prior to or at the time of your termination, (ii) with respect to which direct or related product or element thereof, or process of facilities for the production thereof, you possess or have had access to Information, or (iii) with respect to which the loyal and complete fulfillment of the duties of your new employment would inherently call upon you to reveal or to base your judgment upon or otherwise to use any UGTC Information.
 
 
 8
 During the later part of his employment by Uniroyal Goodrich, Hudson worked as a tire failure analyst. After leaving the company, Hudson joined Kurt Scientific Counselors, Inc. as a litigation tire consultant. After joining Kurt Scientific, Hudson was hired as an expert witness/consultant for the plaintiffs in two companion products liability cases pending against Uniroyal Goodrich in Georgia state court. As part of the Georgia litigation, the state trial judge entered a protective order on April 14, 1992, guarding the alleged trade secret status of information that would be provided by Uniroyal Goodrich during discovery. On August 23, 1993, the Georgia trial judge entered a discovery order requiring the plaintiffs in that case to identify their experts. At that point, Uniroyal Goodrich learned that Hudson would be serving as an expert witness for the Georgia plaintiffs.
 
 
 9
 On October 14, 1993, Uniroyal Goodrich requested that the Georgia court extend discovery deadlines, and that request was granted. One day later, Uniroyal Goodrich filed the present action in the United States District Court for the Eastern District of Michigan. Uniroyal Goodrich's complaint alleged breaches of contract and common law confidentiality obligations, and sought a temporary restraining order and preliminary injunction.[1] The company argued that it would be placed at a severe competitive disadvantage and was in imminent peril of suffering significant competitive losses if its confidentiality agreements with Hudson were not enforced.
 
 
 10
 On October 19, 1993, after a hearing on Uniroyal Goodrich's motion, the district court issued a temporary restraining order pending a hearing on the preliminary injunction motion. The protective order enjoined Hudson as follows:
 
 
 11
 A. That Hudson be enjoined from using or disclosing to anyone without the prior express permission of UGTC any information regarding condition codes used by UGTC in documenting adjusted or return tires from the field, and information relating to UGTC adjustment claim forms and adjustment rates in general, as well as adjustment claim forms and adjustment rates relating to the particular model tire and its family of tires involved in the litigation pending against UGTC in Fulton County, Georgia.
 
 
 12
 B. That Hudson be enjoined from using or disclosing to anyone without the express consent of UGTC any information regarding UGTC employees, company policies, practices, procedures, documents, inspection and adjustment process, and his knowledge about the UGTC Tuscaloosa, Alabama Plant.
 
 
 13
 C. That Hudson be ordered forthwith to disclose the identities of each and every person to whom he has disclosed any of the information described in Paragraphs A and B above.
 
 
 14
 D. That Hudson be enjoined from using or disclosing UGTC's trade secrets and confidential and proprietary information to anyone for any purpose without the express consent of UGTC.
 
 
 15
 On the same date as the hearing on the temporary restraining order, Uniroyal Goodrich filed a motion in the Georgia litigation seeking a protective order with respect to Hudson's involvement in that case. On October 28, 1993, the Georgia trial judge ordered Uniroyal Goodrich to withdraw any objection it had to Hudson appearing as a witness in the Georgia litigation, thereby providing the express consent required by the federal district court's temporary restraining order.[2] The Georgia court further ordered Uniroyal Goodrich to cooperate in scheduling Hudson's deposition, and held that his testimony would be subject to the April 14, 1992 protective order.
 
 
 16
 On November 4, 1993, the federal district court granted Uniroyal Goodrich's motion for a preliminary injunction of the same scope as the temporary restraining order. The preliminary injunction expressly provided, however, that its nondisclosure proscriptions "do not apply to Hudson's disclosure of information in an official proceeding of a court of record."
 
 
 17
 On November 22, 1993, the Georgia court held a hearing to determine the scope of Hudson's deposition, which was scheduled to be taken the following day. The court ruled that Hudson could testify as both an expert and fact witness in his deposition. Hudson's deposition was taken on November 23 and 24. A de bene esse deposition was completed on March 12, 1994.
 
 
 18
 On February 9, 1994, Uniroyal Goodrich moved to have Hudson held in contempt based on his continued use and disclosure of Uniroyal Goodrich's confidential information in violation of the preliminary injunction. Uniroyal Goodrich's motion was based on activities Hudson was taking in preparation for his deposition in the Georgia case, which Uniroyal Goodrich argued involved the continued unauthorized use of Uniroyal Goodrich information.
 
 
 19
 On March 16, 1994, the district court held that Hudson's activities in reviewing and tabulating information while working as an expert for the Georgia plaintiffs involved a "use" of Uniroyal Goodrich information prohibited by the secrecy agreements and the preliminary injunction, and found Hudson in contempt of its preliminary injunction. The court issued the following order: "Defendant William Hudson is hereby precluded and prohibited from testifying for, or maintaining any further contact or involvement with, the attorneys for plaintiffs in the two cases referred to as 'the Ford litigation,' now pending in the Georgia state court."[3] Because of the contempt order issued against him, Hudson did not testify live at the Georgia trial, but his deposition testimony was used. On March 31, 1994, the jury in the Georgia litigation returned a verdict against Uniroyal Goodrich and awarded approximately $43 million to the plaintiffs.
 
 
 20
 On April 11, 1994, Hudson filed a motion for summary judgment in the present action on the grounds that Uniroyal Goodrich could not demonstrate a legally cognizable injury; that construction of the confidentiality agreements to prevent him from participating in litigation against Uniroyal Goodrich would violate public policy and the company's interests could be adequately protected in individual product liability actions; that the confidentiality agreements had expired; and that there was no genuine issue of material fact that the information allegedly disclosed or used by Hudson was not trade secret or confidential information. The court denied Hudson's motion on June 28, 1994, and the bench trial of this action began on November 21, 1994.
 
 
 21
 On December 27, 1994, the district court found that Hudson had breached his nondisclosure agreements with Uniroyal Goodrich, and that there was a threat that he would continue to do so if allowed to testify against Uniroyal Goodrich. On this basis, the district court entered a permanent injunction ordering that Hudson be "permanently enjoined from testifying as an expert witness against [Uniroyal Goodrich]." In addition, the court ordered that "before Hudson uses or divulges any [Uniroyal Goodrich] Information in any matter, [he] shall immediately notify [Uniroyal Goodrich] in the course of, or prior to the commencement of, consultation and/or testimony, whichever comes first, in such matter where it appears that [he] may be called upon to use, disclose, discuss or testify about any [Uniroyal Goodrich] Information." This appeal followed the district court's grant of permanent injunctive relief in favor of Uniroyal Goodrich.
 
 
 22
 Hudson makes three arguments on appeal: (1) the district court erred in denying his pretrial motion for summary judgment; (2) the district court wrongly held him in contempt for violating the preliminary injunction; and (3) the district court erred in granting the permanent injunction. We address each of Hudson's arguments in turn.
 
 
 23
 Hudson first argues that the district court erred in denying his pre-trial motion for summary judgment. In his motion, Hudson claimed that: (1) the contractual confidentiality agreements required him to refrain from use and disclosure of Uniroyal Goodrich information for a two-year period after his employment ended, and that period had expired; (2) there was no genuine issue of material fact as to whether he had breached the confidentiality agreements; and (3) to interpret the contracts in the manner sought by Uniroyal Goodrich would violate public policy and Uniroyal Goodrich's interest could be adequately protected within the parameters of the court rules governing individual litigation in which Hudson is involved as a consultant or witness.
 
 
 24
 Normally, a denial of summary judgment, followed by a full trial on the merits of an action, is "not properly reviewable on an appeal from the final judgment entered after trial." Jarrett v. Epperly, 896 F.2d 1013, 1016 (6th Cir.1990) (citations omitted); see also Summit Petroleum Corp. v. Ingersoll-Rand Financial Corp., 909 F.2d 862, 865 n. 4 (6th Cir.1990). Here, however, the legal and factual issues raised in Hudson's motion for summary judgment were presented and argued during the bench trial of this case. Resolution of these issues was necessary for the district court's decision to grant a permanent injunction. Hudson has properly appealed the issuance of the permanent injunction. Accordingly, we ultimately will address the issues raised in Hudson's motion for summary judgment in the course of this opinion. However, we characterize our review as determining whether the district court erred in issuing the permanent injunction after holding a bench trial, rather than determining whether the court erred in denying Hudson's motion for summary judgment.
 
 
 25
 Hudson's next argument on appeal concerns the district court's decision holding him in contempt for violating the preliminary injunction issued by that court.[4] Hudson argues that the district court wrongfully held him in contempt because the language of the preliminary injunction did not evidence any intent by the district court to prohibit his activities in preparing for his deposition testimony. Hudson contends that the preliminary injunction provided that Hudson was not to use or disclose certain categories of Uniroyal Goodrich information, except in "an official proceeding of a court of record." Hudson claims that this language cannot be deemed to constitute a "definite and specific order of the court" requiring him to refrain from reviewing Uniroyal Goodrich information provided by the Georgia plaintiffs' attorneys in preparing to render expert opinions at his deposition. He therefore argues that Uniroyal Goodrich failed to establish by clear and convincing evidence that he violated the preliminary injunction, and that the district court abused its discretion by holding him in contempt.
 
 
 26
 Uniroyal Goodrich, on the other hand, argues that it is entitled to enforce its valid contracts with Hudson, which they argue properly prohibited him from trading on Uniroyal Goodrich's information though use or disclosure. Uniroyal Goodrich argues that Hudson's ex parte use of specified information in direct contravention of the district court's preliminary injunction justified the district court's contempt finding. The company argues that the preliminary injunction was crafted to permit Hudson to testify in open court or on the record in deposition. The company argues that the order did not inhibit the flow of information in personal injury litigation, so long as it was subject to appropriate notice and litigation safeguards. Private use and disclosure of the information for profit and in violation of Hudson's agreements, according to Uniroyal Goodrich, was what the district court's preliminary injunction prohibited.
 
 
 27
 Before addressing the merits of this argument, we believe it appropriate to note that our jurisdiction to hear this claim is not entirely clear from the record. Although the parties do not mention the issue, Hudson's notice of appeal referenced the district court's December 28, 1994, "final judgment" finding him in breach of the confidentiality agreements and issuing a permanent injunction enjoining him from using any Uniroyal Goodrich confidential information. His notice of appeal did not specifically mention the district court's order finding him in contempt, and the district court's opinion and order of December 28 did not discuss the issue. In fact, the parties by stipulation had dismissed previously Hudson's appeal to this Court of the district court's contempt order.
 
 
 28
 Nonetheless, it appears that we have jurisdiction to review Hudson's objections to the district court's contempt ruling. Fed.R.App.P. 3(c) requires that a notice of appeal: 1) specify the party or parties taking the appeal; 2) designate the judgment or order being appealed; and 3) name the court to which the appeal is being taken. Brooks v. Toyotomi Co. LTD., 86 F.3d 582, 584 (6th Cir.1996). If an appellant designates a specific order in the notice of appeal, only issues pertaining to that order may be raised on appeal. Crawford v. Roane, 53 F.3d 750, 752 (6th Cir.1995), cert. denied, 116 S.Ct. 1354 (1996). However, the general jurisdictional rule is that an appeal from a "final judgment" brings into question all prior non-final orders. Id. (citing International Union, United Automobile, Aerospace & Agricultural Implement Worker of America v. United Screw & Bolt Corp., 941 F.2d 466, 471 (6th Cir.1991)). A civil contempt order normally is considered interlocutory in nature, subject to several exceptions which allow for the instant appeal of a contempt ruling. Blaylock v. Checker Oil Co., 547 F.2d 962, 965 (6th Cir.1976). In most situations, then, a general appeal from a "final judgment" would bring a district court's prior finding of contempt before this Court for review. For the purposes of this appeal, we will assume that we have jurisdiction to address the district court's contempt ruling, because we do not believe the court erred by finding Hudson in contempt of its preliminary injunction.
 
 
 29
 This court reviews a district court's decision to impose contempt sanctions for an abuse of discretion. United States v. Wilson, 421 U.S. 309, 316-17 (1975); Harrison v. Metropolitan Govt. of Nashville, 80 F.3d 1107, 1112 (6th Cir.1996). The movant in a civil contempt proceeding bears the burden of proving by clear and convincing evidence that the respondent "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." Glover v. Johnson, 934 F.2d 703, 707 (6th Cir.1991) (citation omitted). This heavy burden of proof requires more than proof by a mere preponderance of the evidence. Consolidation Coal Co. v. Local No. 1784, United Mine Workers of America, 514 F.2d 763, 766 (6th Cir.1975). Factual findings underlying a contempt order are reviewed for clear error. F.D.I.C. v. LeGrand, 43 F.3d 163, 166 (5th Cir.1995).
 
 
 30
 We do not believe the district court abused its discretion by finding Hudson in contempt of the preliminary injunction. Hudson first argues that the court's preliminary injunction did not contain a "definite and specific order" requiring him to refrain from using Uniroyal Goodrich's confidential information. He bases this argument on the fact that the district court expressly limited the preliminary injunction by ruling that it did not apply to the disclosure of information "in an official proceeding of a court of record." According to Hudson, if the district court intended him to refrain from examining confidential documents in preparation for giving expert testimony in the Ford litigation, the preliminary injunction did not expressly set forth such an order.
 
 
 31
 We agree with Hudson that, under the express language of the court's preliminary injunction, he clearly would have been able to testify as a witness in the Ford proceedings. However, we believe the preliminary injunction does contain express, definite orders to refrain from using confidential information in preparation for his testimony. In three separate paragraphs, the preliminary injunction expressly prohibits the use of various kinds of confidential information. The district court's limited exception to its preliminary injunction, which allowed for the disclosure of such information in an official proceeding of a court of record, says absolutely nothing about the use of that information prior to giving testimony as a witness. Rather, as noted above, the preliminary injunction expressly prohibits such use. Accordingly, this argument must fail.
 
 
 32
 Hudson next argues that the information he used and reviewed in preparing for his expert testimony in the Ford litigation was not confidential information covered by the confidentiality agreements between Hudson and Uniroyal Goodrich. Under Hudson's theory, the preliminary injunction prohibited him from using only that confidential information he acquired in the course of or arising from his employment with Uniroyal Goodrich. Because he was reviewing confidential information submitted by Uniroyal Goodrich in response to discovery requests, Hudson argues that he was not using information covered by the parties' confidentiality agreement. He bases his claim on the 1991 agreement, which states that, "you agree as follows:"
 
 
 33
 1. To maintain Information in confidence at all times during and after your employment whether acquired before this date or after, or in the course of or arising from your employment with [Uniroyal Goodrich]. You specifically agree that you will not use any Information, independent of your work for [Uniroyal Goodrich] and will not divulge Information to others ...
 
 
 34
 We do not read this provision so narrowly. The plain language of the clause prohibits the use of "information," and such information can be acquired "before this date or after, or in the course of or arising from" Hudson's employment with Uniroyal Goodrich. (emphasis added). The use of the disjunctive in the above phrase clearly indicates that it is not limited to confidential information acquired in the course of or arising from Hudson's employment. Accordingly, the district court did not err in its view that the manner of acquisition of the confidential information was not dispositive.
 
 
 35
 Finally, Hudson argues that his review of the information in preparation for his testimony did not constitute "use" of the information as contemplated by the preliminary injunction. He claims that because he realized no profit from his actions, and Uniroyal Goodrich suffered no competitive disadvantage, he did not "use" the information when he analyzed, summarized, and collated the materials given to him by the Ford attorneys. However, the terms of the agreement do not limit "use" to that use which results in a competitive disadvantage to Uniroyal Goodrich. Further, Hudson's profit from such use, or the lack thereof, is irrelevant. Nothing the confidentiality agreements requires a showing that Hudson profited from his use of Uniroyal Goodrich's confidential information. In light of the foregoing, we cannot say that the district court abused its discretion in finding Hudson in contempt of its preliminary injunction.
 
 
 36
 Hudson also takes issue with the district court's decision to preclude him from testifying in the Ford litigation as a sanction for his failure to abide by the court's preliminary injunction. However, the district court did not abuse its discretion in fashioning a remedy it believed appropriate for Hudson's violation of its preliminary injunction. We have previously explained, "[c]ivil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained." Downey v. Clauder, 30 F.3d 681, 685 (6th Cir.1994). Here, Uniroyal Goodrich sought an order flatly prohibiting Hudson from working for Kurt Scientific Counselors, Inc., as an expert in any case during the pendency of the Ford litigation. However, the district court believed that request to be violative of public policy. Instead, the court simply prohibited Hudson from participating in the Ford litigation, because Hudson's participation in that litigation was precisely what led to Hudson's violation of the preliminary injunction. On these facts, we cannot say that the district court abused its discretion in fashioning this remedy for Hudson's civil contempt.
 
 
 37
 Hudson's third argument on appeal is that the district court erred in granting Uniroyal Goodrich permanent injunctive relief because: (1) his contractual obligations had expired; (2) public policy considerations dictate that the determination of whether and to what extent he should be able to serve as a witness in product liability litigation should be left to the courts in which such actions arise; (3) Uniroyal Goodrich failed to show any evidence to support the district court's finding that Hudson breached the subject contracts;[5] and (4) Uniroyal Goodrich failed to establish that Hudson's conduct, even assuming it was in breach of his contractual obligations, posed more than a speculative threat that injury might occur. Hudson therefore claims that the district court's decision to grant a permanent injunction was based both on clearly erroneous factual findings and an erroneous application of legal standards.
 
 
 38
 Uniroyal Goodrich argues, by contrast, that the district court properly entered a permanent injunction based on findings that Hudson had breached, and in the future would continue to breach, his contractual obligations by using and/or disclosing confidential information. Moreover, Uniroyal Goodrich argues that it had no adequate remedy at law and that there was a substantial risk of irreparable harm if Hudson were allowed to continue using and/or disclosing its confidential information.
 
 
 39
 In seeking a permanent injunction, a party must make a clear showing of a significant threat that irreparable injury will result if relief is not granted, and that no other adequate legal remedy is available. City of Parma v. Levi, 536 F.2d 133, 135 (6th Cir.1976). Where a party seeks an injunction enforcing an employment nondisclosure agreement or to protect trade secrets, there must be an "imminent threat of the allegedly harmful disclosure." Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 358-59 (3rd Cir.1980) (stating also that "more than a risk of irreparable harm must be demonstrated"). This Circuit has held that the loss of fair competition resulting from the breach of a no-compete agreement may harm an employer irreparably. Basicomputer Corp. v. Scott, 973 F.2d 507, 512 (6th Cir.1992).
 
 
 40
 A district court's decision to enter a permanent injunction is reviewed for an abuse of discretion. Wayne v. Village of Sebring, 36 F.3d 517, 531 (6th Cir.1994), cert. denied, 115 S.Ct. 2000 (1995). In this case, the district court held:
 
 
 41
 Although none of the witnesses stated they had personal knowledge that plaintiff's attorneys or other experts had ever communicated Information to competitors, the Court finds that such a communication "could" occur. When an expert participates in an official court proceeding, protective orders can be issued which try to ensure confidentiality. Consultations by an expert prior to official, on the record, proceedings lack the same protections. Even if plaintiff's attorneys or other experts do not communicate UGTC Information to competitors directly the Information is placed in the public realm. As this Court has previously noted, and several witnesses testified, once the Information is out, it is out; then the Information is accessible to anyone.
 
 
 42
 Uniroyal Goodrich argues that this court should uphold the permanent injunction because the district court's factual findings supporting its grant of the injunction were not clearly erroneous, and the district court applied the correct legal standard in finding a threat of irreparable harm and the absence of an adequate legal remedy. The district court found that: the information at issue qualified for trade secret protection; Hudson "used" the information in preparing to testify for his depositions in the Georgia litigation;[6] Hudson disclosed confidential information,[7] and Hudson's confidentiality obligations did not expire after two years. In addition, the district court made the following findings regarding irreparable harm and legal remedies:
 
 
 43
 1. Mr. Hudson is in the business of selling his services as a tire expert.
 
 
 44
 2. If Mr. Hudson is identified as a witness against UGTC, it will be because he is using and/or disclosing UGTC information in violation of his agreements; furthermore, by violating the preliminary injunction, Mr. Hudson demonstrated that he "will use UGTC Information" if he testifies against UGTC.
 
 
 45
 3. Consultations by an expert before official on the record proceedings are unprotected and disclosures to plaintiffs' attorneys or other experts, even though not to competitors directly, place confidential information in the public realm.
 
 
 46
 4. Once confidential information is in the public realm, it is no longer protected and it can be used by competitors.
 
 
 47
 5. Once confidential information is no longer protected, there is no adequate remedy at law.
 
 
 48
 6. Because of the foregoing, UGTC "would be irreparably harmed" if Mr. Hudson is not enjoined from ex parte voluntary use and disclosure of its information.
 
 
 49
 Hudson first argues that the district court applied an incorrect legal standard to determine whether Hudson's conduct posed a significant threat of irreparable injury to Uniroyal Goodrich. Focusing on the court's conclusion that communications of confidential information to Uniroyal Goodrich's competitors "could" occur, Hudson claims that this conclusion is merely speculative, and does not represent the kind of immediate, significant threat of injury required to support the grant of a permanent injunction against the disclosure of trade secrets. However, the "threat" of disclosure can establish immediate irreparable harm in some situations. See Campbell Soup Co. v. Conagra, Inc., 977 F.2d 86, 92 (3d Cir.1992). Here, as the district court noted, once confidential information is placed in the public realm, it is no longer confidential, and is subject to use by competitors. Uniroyal Goodrich was not required to establish that its competitors were actually on the verge of using such information. It was sufficient to show that Hudson's use and disclosure of the information in the context of pre-trial communications with others presented a significant threat that Uniroyal Goodrich's information would no longer be confidential.
 
 
 50
 Finally, Hudson takes issue with several findings of fact made by the district court. We have reviewed carefully the record in this case, and conclude that the court committed no clear error in finding that Hudson had breached, and will continue to breach, the confidentiality agreements in the absence of a permanent injunction prohibiting him from doing so. In connection with this, we note that we agree with the district court's construction of the two confidentiality agreements, and therefore find no merit in Hudson's claim that he was only prohibited from using or disclosing confidential information for a term of two years after the termination of his employment. Hudson admits that the 1987 confidentiality agreement contained no two-year time limitation. Similarly, the 1991 agreement contained a confidentiality clause with no explicit limitation of its duration. However, Hudson focuses on a separate clause in the 1991 agreement, section six set forth above, which set a two year limitation on Hudson's agreement not to compete with Uniroyal Goodrich. According to Hudson, because the 1991 agreement supplemented the 1987 agreement, this two-year limitation also limited the duration of his confidentiality obligations. We disagree. The two-year limitation in the non-competition clause is not a general time limitation on Hudson's duty not to use or disclose confidential Uniroyal Goodrich information. Rather, it is a two-year prohibition on competition, which includes as one of the categories of prohibited competition, the possibility that Hudson might accept new employment that would "inherently call upon [Hudson] to reveal or to base [his] judgment upon or otherwise to use any [Uniroyal Goodrich] Information." Accordingly, we believe the district court was correct in concluding that Hudson's obligation to keep confidential information confidential was of an indefinite duration.
 
 
 51
 Finally, we do not believe that enforcement of the confidentiality provisions of the agreements between Hudson and Uniroyal Goodrich violates public policy. Contrary to Hudson's assertions, the permanent injunction will not unduly interfere with the factfinding process of trials in which he has personal knowledge of factual information relevant to the issues raised at trial. He certainly may testify as a fact witness at any trial. Further, prohibiting Hudson from testifying as an expert in tire failure will not unduly burden plaintiffs who sue Uniroyal Goodrich for the alleged failure of its products. We are confident that Hudson is not the only tire failure expert available to these parties, and plaintiffs are perfectly free to hire another expert tire failure analyst to support their claims.
 
 
 52
 On the other hand, that public policy supports the enforcement of valid contractual agreements belabors the obvious. We therefore decline to hold that public policy prohibits the enforcement of confidentiality provisions such as those at issue here simply because a former employee of Uniroyal Goodrich wishes to use the knowledge and expertise gained from his employment at Uniroyal Goodrich to testify against it as an expert in subsequent product liability litigation.
 
 
 53
 In light of the foregoing, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The district court ultimately granted both preliminary and permanent relief based only on Uniroyal Goodrich's contract claims. The court never reached Uniroyal's common law claims
 
 
 [2]
 In its opinion and order, the Georgia trial court held that if the confidentiality agreements at issue were read to require suppression of Hudson's testimony, they would violate Georgia public policy. The Georgia court also recognized that the Georgia plaintiffs were not Uniroyal Goodrich competitors and were not in a position to use information to the competitive disadvantage of Uniroyal Goodrich
 
 
 [3]
 Hudson filed an appeal from the contempt order which was dismissed without prejudice by stipulation of the parties
 
 
 [4]
 As explained above, the district court held Hudson in contempt for using and reviewing adjustment data, Uniroyal Goodrich studies, and other matters which constituted Uniroyal Goodrich Information outside of court in the Georgia litigation (i.e. in preparing to give expert opinions in deposition testimony)
 
 
 [5]
 Hudson also claims that the district court's finding that he had breached the confidentiality agreements was based in substantial part on erroneously admitted hearsay evidence. Specifically, Hudson claims that the trial court relied on two pieces of documentary evidence that he objected to on the grounds that they constituted inadmissible hearsay. The first was an affidavit of one of the Georgia plaintiffs' attorneys, which set forth what he believed Hudson would testify about in that case. The second was a set of supplemental interrogatory answers filed by the Georgia plaintiffs' attorneys which disclosed Hudson as a witness and explained generally his expected areas of testimony. The district court admitted these documents over Hudson objection for impeachment purposes, and they were not introduced for the truth of the statements contained therein. Accordingly, this argument fails. See, e.g., United States v. Benton, 637 F.2d 1052, 1059 (5th Cir.1981)
 
 
 [6]
 Uniroyal Goodrich contends that this finding was clearly supported by Hudson's time logs, his compiled notes made in preparation for his deposition in the Georgia litigation, and his own admissions of use of Uniroyal Goodrich information
 
 
 [7]
 Uniroyal Goodrich likewise contends that this finding as amply supported by the record, including the time logs Hudson compiled; his repeated meetings with counsel; and his impeachment by a detailed affidavit and expert interrogatory answer filed in the Georgia case